STAPLES, J.,
delivered the opinion of the court.
The court is of opinion that the circuit court did not err in overruling the demurrers to the first and third counts of the plaintiff’s declaration. In an action for damages occasioned by the negligence or misconduct of the defendant, it is not necessary for the plaintiff to allege and prove the existence of due care and caution on his part to entitle him to recover. If the defendant relies upon contributory negligence of the plaintiff to defeat the action he must prove it, unless indeed the fact is disclosed by the evidence of the plaintiff, or may be fairly inferred from all the circumstances. As proof of due care is not a part of plaintiff’s case, it is of course not necessary he should aver it in his declaration. Railroad Company v. Gladmon, 15 Wall. U. S. R. 401; Shearman & Redf. on Negligence, § 43, and cases cited.
The court is further of opinion that the circuit court erred in overruling the demurrer to the second count in the declaration. Substantially, the allegation is that the defendants were possessed of certain engines and cars used and employed in carrying passengers and freight along the line of their railway in Frederick county, Va., and that on the 23d of June, 1874, the defendants conducted themselves so negligently and unskilfully in the operation of their said business as to inflict upon the plaintiff’s intestate severe bodily injuries, by reason -'whereof he died. Now, whether the plaintiff’s intestate was at the time a passenger on the train and received his injuries as such, or whether he was an employee of the company and was injured while engaged in their service, or whether he 'was a stranger crossing the track of the company’s road, or whether he was on the track at all, or in the cars, or at a station, or in what manner he was injured, the declaration does not inform us. It was impossible for the defendants to learn from this declaration the ground upon which plaintiff was proceeding. The declaration amounted to an averment simply, that the plaintiff’s intestate was injured by the negligence of the defendants in the operation of their business in using and employing their engines and cars on their railway. The object of a declaration is to set forth the facts which constitute the cause of action, so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations, and by the court who are to give judgment. 1 Chitty Plead. 256; Barton’s Law Prac. p. 103. It is very true that in actions for torts it is frequently sufficient to describe the injury generally, without setting out the particulars of the defendant’s misconduct. In such cases great latitude of statement is allowed. But this rule does not justify a. general and indefinite mode of declaring, admitting of almost any proof. 1 Chitty Plead. 406, note; Jones v. Stephens, 11 Price’s R. 235; 1 Saunders on Plead, and Evidence, 510.
The learned counsel for the plaintiff insist^ that if greater particularity is required in stating the cause of action, the plaintiff is liable to be defeated on the trial by a variance between the allegations and the proofs. A declaration can, however, subserve no good purpose unless it be sufficiently specific to inform the adverse party of the ground of the complaint. If it is deficient in that particular it may as well be dispensed with altogether. *The plaintiff is presumed to have some knowledge of the facts upon which his action is founded. If he is in doubt as to the precise nature of the evidence, he may frame his declaration with different counts, varying his statements to meet every possible phase of the testimony.
The second count being defective in the particulars already mentioned, the demurrer to it ought to have been sustained.
*270 The court is further of opinion that the circuit court did not err in rejecting the special pleas tendered by the defendants and set out in their first bill of exceptions. The facts stated in their pleas were covered by the general issue joined at a previous term. It was announced by the court and conceded by the counsel for the plaintiff, that the matters set -forth in the pleas could be shown under the issue joined, and they were in fact relied on before the jury. Under such circumstances it is clear the defendants could not have been in the least prejudiced by the rejection of the pleas. The circuit court very properly exercised its discretion in refusing to allow them to be filed. 1 Rob. Prac. 233.
The court is further of opinion that the circuit court erred in not setting aside the verdict and granting the defendants a new trial. The certificate of facts given by the presiding judge, shows that the plaintiff’s intestate was in the service of the defendants as manager or foreman of the hands employed in making repairs on a section or sections of the road near Newtown station; that he had been .thus employed for- several years, and -that while standing near the track of the road he was struck by one of the passenger trains. In what manner this occurred does not very clearly appear. The theory of the plaintiff’s counsel is, that the deceased being at work in repairing the track of the road, upon the approach of the train, withdrew from the track a sufficient *distance to be entirely safe, if the train had been running at its usual speed and with its usual cars. But on that day the train was running on a new schedule with greatly accelerated speed, and with a Pulman or sleeping car attached, which is much wider than the ordinary car, and that the deceased was not notified of either of these facts; that at the point where the injury occurred, there is a curve in the bed of the road, and as the train was passing around this curve the increased speed ‘of travel imparted to it a vibratory or oscillatory motion, and by reason of this motion and the greater width of the Pulman car, the deceased was struck by the iron step attached to that car.
These are mere inferences of the learned counsel, for the record contains no proof of the supposed curve in the road, or that the Pulman car was for the first time attached to the train that day, or of -the alleged vibratory motion, or the extent of it, or of the important fact that the deceased was at a sufficient distance to be secure if the train was running upon the previous schedule. This whole theory of the learned counsel is based upon the proposition that a railroad employee may nicely calculate or estimate the exact distance at which a man may stand from the railroad track when a. train is approaching, supposing the train to travel at its usual speed, and that he has the^ right to assume that this speed will not be increased without notice to him, and if without such notice it is increased, and the_ employee is thereby injured, it is such negligence in the company as entitles the party to damages, although it is manifest that the employee might avoid every injury simply by placing himself a few feet further from the track of the road.
This, it must be admitted, is reducing the calculation of escape and accident to a fractional point. When it is considered that upon many of the railroads there are hundreds and even thousands of laborers daily and hourly *employed all along the line, and not unfrequently twenty and even fifty trains a day, this proposition that a company is under obligation to give notice to each of its employees of every change of schedule, and of every alteration in the width of its coaches, involves consequences of the greatest magnitude. It is not denied that a company may be liable to an employee for an injury occasioned by a change of schedule of which the employee has no notice, provided he is without fault or negligence himself. But it is obvious to every mind, that a man who stands near enough to a railroad track to be struck by a train, if perchance there should be an increase of speed, or a change of cars, is simply guilty of the greatest imprudence and negligence.
No man is justified in placing himself near a passing train upon any such idea or presumption. It is inexcusable rashness and folly to do so. The instincts of self-preservation, the dictates of the most ordinary prudence, would suggest, and 'even require, that every person upon the approach of a train shall retire far enough to avoid injury, whatever may be the speed of the train or the width of the cars/ He must at his peril place himself where he cannot be struck by the train so long as it continues upon its track. Of course the result might be very different where the employee in remaining on or near the track is acting under the instructions of the company.
In the present case the deceased both saw and heard the train long before it reached him. It is not denied he had ample time to get out of the way. He knew, or ought to have known, the train was considerably behind its usual time that day, and was, therefore, necessarily running at- an increased speed.
O’Neil, a subordinate of the deceased, was on the same side of the road with the deceased, but separated from him by a bridge; he, upon the approach of the train, stepped five or six feet down the side of the embankment *from the track, and thus placed himself in a position of security. Cross, another employee, saw the train coming and stepped out upon an abutment of the bridge, and was unhurt. Rogers, another laborer under the deceased, had been working on the side of the track immediately opposite the place the deceased was working, had passed to the deceased’s side of the track just before the train came, and assisted hjm in raising and ramming a loose joint in the rails; he heard the train whistle at Newtown station, saw it coming and stepped immediately across the track to the side on which he had previously stood, and escaped all *271 danger. The deceased, who was a superintendent, a foreman, and presumably possessed of more intelligence than the others, could have done the same thing, or he might have gone down the embankment as wes done by O’Neil. The only witness who saw him at all while the train was passing, states that at the rear platform of the rear car he saw a man apparently within a foot of the train, with his face to the train, in the act of spinning or whirling around, tumbling down the embankment.
If this be so, and it is certified as a fact in the cause, it would of itself go very far to show the grossest negligence on the part of the deceased iu remaining so near the road as to incur all the risks of injury from the passing train. Under such circumstances it is clear there can be no recovery. The rules of law governing in cases of contributory negligence are well settled. They have been very recently the subject of consideration in the case of the Baltimore & Ohio R. R. Company v. Sherman, decided at the present term. The principle of the cases is, that if tlie wrongful or negligent act of the plaintiff co-operated with the misconduct of the defendant to produce the damage,^ the action cannot be maintained. In other words, if the plaintiff through want of ordinary care has materially contributed to the injury he has sustained, *he is precluded from a recovery, although the defendant may be chargeable with negligence also. If, therefore, it should be conceded in this case that the defendants were guilty of negligence in not apprising the deceased of the change of schedule time and of the addition of the Pulman car, and that the deceased was injured by reason of the operation of these two causes, still it is plain the deceased, by the exercise of Ordinary care and prudence, such as was shown by his associates, would have sustained no injury whatever. 2 Redf. on the Raw of Railways, 244; Peirce on Amer. R. R. Law, 272.
These principles of law apply with peculiar force to employees of a railroad company, who are in a relation of privity with their principals, have every opportunity of becoming well acquainted with the business, and are presumed to know and understand something of the risks and dangers incident to that business. Prom such persons a greater degree of caution in avoiding dangers ought to be required than from passengers and others having no privity with the company and no especial acquaintance with the operations of the road. And this distinction is not only sustained by the authorities, but is founded in reason and sound policy.
Por these reasons the court is of opinion that the verdict is contrary to the law and the evidence, and the circuit court erred in not setting it aside and granting the defendants a new trial. This renders unnecessary any special consideration of the several instructions asked for by the defendants, and set out in their bills of exceptions Nos. 4 and 5. Besides, it is apparent the questions presented by these instructions are not likely to arise upon any future trial.
Plaintiff’s instruction set out in defendants’ third bill of exceptions is as follows:
“If the jury believe from the evidence that the death of Whittington was the result of a change of the usual *train from an accommodation train of moderate rate of travel to what is known as a lightning express train of a rate of travel from twenty-five to thirty-five miles per hour, and of a change of schedule of the time of running the train passing the point at which Whittington was killed, that said changes were by the chief authority of the Baltimore and Ohio Railroad Company, and that the death of said Whittington was without fault on his part, and that said company had not given notice of said changes to its employees — Whittington being one of them— so as to enable them to avoid danger, they are instructed that it was the duty of said railroad company to give such notice; and their failure to do so is the negligence of the said company, for which said company is responsible in damages.”
This instruction, in itself, is not objectionable. From what has been already said, however, upon the subject of the motion for a new trial, it has been seen that the evidence shows that the death of the plaintiff’s intestate “was not without fault on his part.” In this view it may be a question whether the facts justified an instruction of the kind; but in the language of this court in Early v. Garland’s lessee, 13 Gratt. 1, 14: “To withdraw a case from a jury by first passing upon a question of fact and then refusing the instructions because in the opinion of the court the evidence failed to prove the case assumed, would necessarily involve a confusion of the boundaries separating the province of the court from that which properly belongs to the jury. Where there is any evidence tending to make out the case supposed in an instruction, it is safest and best to give the instruction, if it propound the law correctly.” Early v. Garland’s lessee, 13 Gratt. 1, 2.
In this view it cannot be affirmed that the circuit court erred in giving the instruction, more especially as the question of negligence was peculiarly one for the consideration ot the jury. But for the reasons already *stated, the court is of opinion that the judgment of the circuit court is erroneous and must be reversed and annulled, the verdict set aside, and a new trial awarded the defendants, with liberty to the plaintiff to amend his declaration if he so desires.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the second count in the plaintiff’s declaration is not sufficiently certain in setting forth the facts upon which the cause of action is founded, and the court therefore erred in overruling the demurrer to that count, but the said circuit court did not err in overruling *272 the demurrer to the other counts of the declaration.
_ The court is further of opinion that the circuit court did not'err in giving to the jury the instruction set out in the defendants’ third bill of exceptions. The court deems it unnecessary to express any opinion upon the two instructions asked for/ by defendants and refused by the court, as it is obvious the questions presented by said instructions are not likely to arise upon any future trial.
The court is further of opinion that the said circuit court did not err in rejecting the special pleas tendered by the defendants, as the matter of said pleas was covered by the general issue, and under that issue were relied on before the jury.
The court is further of opinion that the circuit court erred in refusing to set aside the verdict and grant the defendants a new trial, for the reason that the verdict was contrary to the law and the evidence. *It is therefore considered by the court that, for the_ reasons aforesaid, the judgment of the circuit court be reversed and annulled, the verdict set aside, and a new trial awarded the defendants in copformity with the views herein expressed; and that the plaintiffs in error recover against the defendant in error their costs by them expended in the prosecution of their writ of error and supersedeas aforesaid here; and the cause is remanded to the said circuit court and leave given the plaintiff to amend his declaration, if he desires to do so; all which is ordered to be certified to the said circuit court of Frederick county.
Judgment reversed.