Burks, J.
An action was brought in the court below, under the statute (Code of 1873, ch. 145, §§ 7, 8, 9, 10), by the personal representative of "W. "W. Anderson, Sr., deceased, against the Richmond and Danville Bail-road Company, to recover damages resulting from the death of said decedent, caused, as alleged, by the negligence of the said railroad company.
The plea was “ not guilty.” On the trial of the issue joined on that plea, the defendant demurred to the evidence. Upon the demurrer, the court .rendered judgment in behalf of the plaintiff- for the amount of damages conditionally assessed by the verdict of the jury. The judgment is to be now reviewed on a writ of error ^warded by one of the judges of this court on the application of the defendant.
Regligonce is the gist of this action. If the injury which resulted in the death of the plaintiff’s intestate, was occasioned by the negligence of the defendant, and solely by such negligence, there can be no doubt of the plaintiff’s right to recover damages for the injury; but if there was negligence on the part of the defendant, and also on the part of the deceased, and the negligence of the latter contributed to the injury, the right of recovery depends upon the circumstances.
The Richmond and Danville R. R. Co. v. Morris, recently decided by this court, was a case in which the plaintiff and defendant were mutually in fault, and the combined or concurring negligence of the parties was the proximate cause of the injury for which the action was brought. The negligence of each party was proximate to the injury, both in the order of time and causa *814 tion. The negligence of the -conductor in putting the P’ain motion immediately after he had awakened the last time and told him to get off, and before he had time to get off, concurring with the negligence °f Morris, after he had received the direction from the conductor, in walking to the rear of the train and -jumping off while the train was hacking, instead of Upping out upon the platform, as he might have done safely and conveniently, caused the injury complained of. This court did not undertake, in that case, to lay down the law on the subject of contributory negligence further than was applicable to the particular case, as w-ill appear by the following extract from the opinion of the court: “The reports are filled with cases expounding and illustrating the doctrine of contributory negligence, and there is more or less conflict in the decisions, under the diversity of circumstances in the cases. Attempt to reconcile them would be labor to no useful purpose. We shall make no such attempt. We think the law on the subject applicable to such a state of facts as we have to deal with is correctly laid down by the supreme court of the United States in the recent case of Railroad Company v. Jones, 95 U. S. R. (5 Otto), 439.”
The rule stated by Mr. Justice Swayne in the ease in 5 Otto (which was approved by this court), so far as it relates to contributory negligence, is certainly the correct rule, if limited in its application to cases like the one then under consideration by this court, of mutual or concurring negligence. This rule, in its restricted form, is stated by Chief Justice Black in the extract which was taken from his opinion in Railroad Company v. Aspell, 23 Penn. St. 147, 149. “It has been a rule of law from time immemorial,” he said, “ and is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual fault of both . parties. When it can be shown that it would not have *815 happened except for the culpable negligence of the party injured concurring with that of the other party no action can be maintained.”
While it is true, however, that where the negligence of each party concurring with that of the other is the proximate cause of an injury, neither can maintain an action against the other for such injury, because, among other reasons, the damages resulting from the injury cannot be apportioned, yet it is equally true that a plaintiff may, under certain circumstances, be entitled to 'recover damages for an injury although he may by his own negligence have contributed to produce it.
The rule as stated by Mr. Justice Swagne in Railroad Co. v. Jones, supra, approved by this court in Railroad Co. v. Morris, is taken almost literally from the opinion of Mr. Justice Wightman in Tuff v. Warman, 5 Q. B. N. S. (94 E. C. L. R.) 573. So much only was quoted from the opinion in the English case as wras deemed applicable b}T the supreme court, and afterwards by this court, to the facts in the cases respectively to which the rule was applied.
Reference to the case of Tuff v. Warman will show the rule as extracted by the supreme court, and also a qualification of that rule, which was not noticed.
Mr. Justice Wightman, delivering the judgment of the court in the exchequer chamber, on an appeal from a decision of the court of common pleas, said: “It appears to us that the proper question for the jury in this case, and indeed in all others of the like kind, is whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution that but for such negligence or want of ordinary care and caution on his part the misfortune would not have happened. In the first case, the plaintiff would be *816 entitled to recove1’; in the latter, not; as, but for his own fault, the misfortune would not have happened.”
The foregoing is what was quoted in Railroad Co. v. Jones and Railroad Co. v. Morris, and was all-sufficient for the purposes of these eases under the facts. But the English judge, in his opinion, adds this important qualification to what he had said: “ Mere negligence or want of ordinary care or caution would not, however, dis-entitle him (the plaintiff) to l’ecover, unless it were such that but for that negligence or want of ordinary care and caution the misfortune could not have happened; nor, if the defendant might, by exercise of care on his part, have avoided the consequence of the neglect or carelessness of the plaintiff'.”
“ This,” he says, “ appears to be the result deducible from the opinion of the judges in Butterfield v. Forrester, 11 East, 60; Bridge v. The Grand Junction Railway Co., 3 M. & W. 244; Davies v. Mann, 10 M. & W. 545; Dowell v. The General Steam Navigation Co., 5 E. & B. 194, E. C. L. R. vol. 85.
Such is the English rule; and it is said by Judge Cooley, in his recent treatise on Torts, that it has been accepted by the courts in this country with few exceptions. See Cooley on Torts, 675, and the great multitude of American cases cited in a note as following the English rule.
In a case decided by the House of Lords very recently (1876), on appeal from the exchequer chamber, the rule, in substantial!}7 the same form, or to the same effect, has been reiterated. Lord Penzance, in delivering the judgment, which was concurred in, said : “ The first proposition is a general one, to this effect: that the plaintiff in an action for negligence cannot succeed if it is found by the jury that he has himself been guilty of any negligence or •want of ordiuary care, which contributed to cause the accident.
*817 “ But there is another proposition equally well established, and it is a qualification upon the first, namely, that though the plaintiff may have be'en guilty of negligence, and although that negligence may, in fact, have contributed to the accident, yet, if the defendant could, in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff ’s negligence will not excuse him.” And his Lordship adds: “This proposition, as one of law, cannot be questioned. It was decided in the case of Davies v. Mann (10 M. & W. 545), supported in that of Tuff v. Warman (5 C. B. N. S. 573) and other cases, and has been universally applied in eases of this character without question.” Radley v. London and Northwestern Railway Co., 1 Appeal Cases (Law Reports, 1875-6) 754, 759.
Although there is some conflict in the American decisions, the weight of authority seems to be very decidedly in favor of the English rule, and the rule itself appears to me to he a just and reasonable one. It cannot be expected that the numerous American decisions on this subject could he examined within the limits of this opinion. I refer again to the cases cited in the note in Cooley on Torts, ubi supra, and content myself with a notice of a few eases cited in argument by the learned counsel for the defendant in error.
In the opinion of the court, delivered by Isham, J., in Trow v. Vt. Central R. R. Co., 24 Verm. R. 487, 495, which seems to be a well considered case, and has been often cited with approbation in other cases, it is said, that when there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained; the words “ proximate cause ” being used in the opinion as indicating negligence occurring at the time the injury happened. In such case no action can be sustained by *818 either, for the reason that as there can be no apportionment of damages, there can be no recovery. So, where the negligence of the plaintiff is proximate, and that of the defendant remote, or consisting of some other matter than what occurred at the time of the injury, in such case no action can be maintained, for the same reason that the immediate cause was the act of the plaintiff. Under this rule falls that class of cases where the injury arose from the want of ordinary or proper care on the part of the plaintiff at the time of its commission. On the other hand, when the negligence of the defendant is proximate, and that of the plaintiff' remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems to be new* settled, says the judge, in England and in this country. Therefore, if there be negligence on the part of the plaintiff, yet if at the time when the injury was committed it might have been avoided by the defendant in the exercise of reasonable care and prudence, an action will lie for the injury. In support of these propositions the following English authorities were cited: Davies v. Mann, 10 M. & W. 545; Mayor of Colchester v. Brooke, 53 Eng. C. L. 339; 3 M. & W. 244, and other cases.
In the case often cited of Kerwhaher v. The Cleveland, Columbus and Cincinnati R. R. Co., 3 Ohio St. R. 172, it is said, that the liability to make reparation for an injury by negligence is founded upon an original moral duty, enjoined upon every person, so to conduct himself or exercise his own rights as not to injure another; that the mere fact that one person is in the wrong does not necessarily discharge another from the due observance of proper care towards him, or the duty of so exercising his own rights as not to do him an unnecessary injury; and that the doctrine, that in the case of an injury by negligence, where the parties are mutually in fault, the injured party is not entitled to redress, is subject, as appears from *819 a review of the decisions both in England and in this country, to material qualifications, among which are the following: First, the injured party, although in the to some extent at the time, may, notwithstanding this, be entitled to reparation iu damages for an injury, which he has used ordinary care to avoid; second, when the negligenee of the defendant in a suit upon such ground of action is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission not occurring at the time of the injury, the action is maintainable.
To the same effect are the following cases: Northern Central Railway Co. v. The State, use of Price and others, 17 Mary. R. 8; Baltimore and Ohio R. R. Co. v. State, use of Trainer and others, 83 Md. R. 542; Brown v. The Hannibal and St. Joseph R. R. Co., 50 Mo. R. 461 (decided in 1872); Central R. R. and Banking Co. v. Davis, 19 Geo. 437; Isbell v. New York and New Haven R. R. Co., 25 Conn. 556; Macon & W. R. R. Co. v. Davis, adm'r, 18 Geo. 679; Herring v. Wil. & Raleigh R. R. Co. 10 Iredell (Law) 402. Balt, and Ohio R. R. Co. v. Sherman's adm'r, 30 Gratt. 602; and same plaintiff v. Whittington's adm’r, 30 Gratt. 805, recent decisions by this court, have an important bearing on the case now under consideration, as illustrating the doctrine of negligence as applied to railroad companies. See also what is said in Sherman & Redfield on Neg., §§ 25, 494 (3d ed.); Wharton on Neg., § 388.
The judgment under review having been rendered on a demurrer to evidence and in favor of the demurree, I am not unmindful of the familiar rule applicable to such a case. The party demurring is considered as admitting the truth of his adversary’s evidence, and all just inferences which can properly be drawn therefrom by a jury, and as waiving all his own evidence which conflicts with that of his adversary, and all inferences, it would seem, *820 from his own evidence (although not in conflict with his adversary’s) which do not necessarily result therefrom. 4 Minor’s Ins., part I, 749, and cases there cited. Most of the Virginia cases on the subject are referred to in the opinion delivered by the president of this court in Trout v. Va. and Tenn. R. R. Co., 23 Gratt. 619.
Judge Stanard in his opinion delivered in Ware v. Stephenson, 10 Leigh, 155, 161, approved by this court in the case last above named, speaking of the inferences which the court should draw from the evidence on demurrer, observed that when the question is whether or no a fact ought to be taken as established by the evidence, either directly or inferentially, in favor of the demurree, he did not know a juster test than would be furnished by the inquiry, Would the court set aside the verdict had the jury on the evidence found the fact? If the verdict so finding the fact would not be set aside, such fact ought to be considered as established by the evidence demurred to.
The evidence demurred to in this case was introduced wholly by the plaintiff, except a brief statement made by a witness on being recalled by the defendant after he had testified in behalf of the plaintiff. This statement is material, but not at all in conflict with the evidence in-7 >V troduced by the plaintiff.
It appears from the evidence, that on the 3d day of October, 1874, the plaintiff’s intestate, W. W. Anderson, Sr., received injuries by collision with a train of cars of the defendant, from the effects of which he died on the 5th of October (same month). The train by which he was struck was a passenger train, moving, at the time of the accident, westwardly, and approaching Greenbay station, in Prince Edward county. The point on the track at which he was struck was east of the station, and distant therefrom about a half mile. The schedule time for the arrival of the train at the station was 5 o’clock and 3 minutes P. M. The de *821 ceased resided about three miles from the station, which he visited frequently, and a mile and a half from the railroad track. There was a road which from the station to the house where the deceased lived, but by going along the railroad track for about a mile and then diverging, the distance to his house would be from half mile to three-quarters of a mile nearer. The railroad track was the way usually travelled by deceased in returning home from the station, and it was the habit of people to walk along the track at this point. There was no proof, however, that the deceased or any other person had license from the defendant to walk along the track at this place, or that the defendant had any knowledge that the track was so used.
.On the day the accident occurred, the deceased was at the station. At what particular hour he arrived does not appear; but it does appear, very distinctly, that at ten minutes before 5 o’clock he left the station to return home. The time of his departure is accurately fixed hy the testimony of the plaintiff, a son of the deceased. It is also sufficiently certain that he knew the schedule time for the arrival of the train at the station on that day. This would be inferred from the vicinity of his residence and the frequent visits to the station; but it is proved by two witnesses that when he was about leaving the station on that day the time for the arrival of the train was announced in his presence, or so near to him that he might have heard what was said. With a knowledge, then, that the train would be due at the station in thirteen minutes, he got upon the track at the station and walked along it eastwardly in the direction from which the expected train would come, and which, if he kept on the track, he would necessarily meet, the train being on time, before he could reach the point at which he *822 would leave the track for his house.- He was seen by a witness at the station to walk along the track until he entered a cut in the road, which prevented the witness, in the position he occupied, from observing him any further.
It appears that the road from the station to the point where the accident occurred, and for several hundred yards in that direction, is straight, the course being east and west, and that it runs mostly through cuts with banks on either side some four or five feet high, and that there are several intermediate crossings. There is no evidence that the deceased, after he entered the cut about ten steps from the station was seen by any person until he was discovered on the track by the engineer. The account given by the engineer is, that when the train was about half a mile distant from the station, and moving with a speed from twenty t.o twenty-five miles per hour, which was the usual speed, and, unimpeded, would have carried the train to the station at the exact time (5 o’clock and 3 minutes P. M.) fixed by the schedule for its arrival, he discovered a man lying on the track, with his back towards the advancing train, and about seventy-five or one hundred yards from it; that he did all in his power to stop the train—blew “ down brakes,” sounded the alarm-whistle, reversed the engine, and threw sand on the track; that he supposed he reduced the speed about one-half, but could not stop the train before it struck the man and knocked him from the track; that the sun was low and shone directly in his eyes ; that when he first saw the man, the latter had his back towards him—his body, from the position in which it was lying, presenting the figure of the letter “IT,” so that he could see neither his hands nor his feet; that he (the engineer) raised up, and the top of the cab then protected his eyes from the sun, and he *823 could then see more distinctly what the object was; that when he blew “ down brakes,” and also gave the alarm-whistle, the man raised up, reclining on his elbow, faced the train, and then stretched himself out on the middle of the track, with his head towards the engine; and after the alarm-whistle was given, the man had sufficient time to have gótton off the track before the engine reached the spot where he was lying.
It was further proved by the engineer, that reversing the engine is the last resort in stopping a train; that it injures the engine, and there is danger in upsetting the train; that' the engine to which the cars were attached on that occasion ivas new—a good engine and in perfect order; that the train was not provided with the improved air-brakes; and that if it had been, he might have been able to stop the train a little quicker, but not soon enough to have prevented striking the man.
Several engineers were examined as witnesses to show the distance within which a train moving with the speed at which the train on that occasion was running might be stopped by the engineer in charge, and there is also evidence that the grade of the road at the point where the accident occurred is ascending; but it is perfectly manifest, and was not seriously questioned in argument, that the train, on the occasion when the accident occurred, could not have been stopped by the engineer, after he first saw the man on the track, before it came in contact with him.
If this were all the evidence in this case there could not even be a pretext for recovery of damages for the injur}7 complained of; for, up to this point in the evidence, whatever may be said of the conduct of the plaintiff’s intestate, no negligence is proved on the part of the railroad company or any of its -agents or employees; *824 and, as before stated, negligence is the gravamen of the action. In such a case the law does not impute it. It on the party alleging it to prove it.
After the engineer saw the man on the track he used a^ means in power, hazarding even the safety of the passengers in suddenly reversing the engine, to avoid injuring him. lie used all the care, skill and diligence situation demanded, but it wras then clearly not in his power to prevent the accident.
Hut it was argued with much earnestness that although it might be that the engineer did not see the deceased on the track until it was too late to avoid the collision, he might and ought to have seen him when it would have been in his power to stop the train and prevent the mischief, and that but for his negligence in not keeping a look-out he could and would have seen him in ample time to have checked the speed of the train, and, if need be, to have stopped it entirely.
It was “ the duty of the engineer to have watched ahead for objects on the track.” He admits that in his testimony. It was probably a regulation of the railroad company. Whether it was or not, the law imposed the duty on- the company as a carrier of persons. It was certainly a duty which the company owed to them, and if, from a negligent failure to observe and perform it, an accident had occurred try which a passenger sustained injury, the company would have been liable for the damage to such passenger. Whether a railroad company owes this duty, under all circumstances, to persons wrongfully on its road need not be decided in this case. Let it be conceded, however, that the defendant owed this duty to the deceased'; the inquiry is, was there neglect of that dutyby the defendant’s agents and servants, and was the accident which happened a consequence of that neglect? The engineer testified that he was at his post, but that he did not and could not see the deceased *825 on the track-in time to prevent the collision because bis vision was affected by the rays of the sun, which at that hour of the day shone directly in his face—the course the road for some distance being east and west. On the other hand, several witnesses testified that the track at the point where the deceased was lying, and for several hundred yards eastward, within which distance there is no doubt the train could have been stopped by the engi•neer with convenience and safety, was shaded by the forest, and at that distance a man on the track could have been distinctly seen. All that may be true, and yet the statement of the engineer may also be true. It do.es not follow that because the track was shaded, as stated, the sun did not shine in the face of the engineer standing at his post. These witnesses did not pretend that they made their observations from every intermediate point in the road. Although the sun may not have shone in the engineer’s face at one or more points, yet these would have been passed in an almost inconceivably short time, the train 'moving with a speed of twenty or twenty-five miles per hour, and thus the deceased, in the position he occupied, may have escaped the observation of the engineer, although on the look-out for objects on the track, and therefore without fault on his part.
.It must be observed, too, that the imputing negligence to the engineer in not seeing the deceased sooner is based upon the assumption of the very important fact that the deceased was on the track when the train reached the first point from which an object on the track could be seen. But no witness proves this fact, so essential to the theory of the imputed negligence. It is impossible to determine from the evidence whether the deceased was on the track or not when' the train reached the first point from which it is said he could have been seen. The place where he was lying was near a cut in the road, and *826 there was a ditch on either side of the track. According to the evidence, he could not have stood on either side ■ and escaped all harm from the passing train. It may be that he tumbled upon the track just ahead of the advancing train. This is entirely consistent with the favorite theory of the counsel for the defendant in error, that he was neither drunk, npr insane, nor voluntarily remaining on the track when the train came upon him, but that he had been suddenly smitten by some providential visitation, by which he was felled to the ground and rendered helpless. When he left the station he was seen walking upon the track; when first discovered by the engineer he was still upon the track, and in the situation which has already been described. Nothing further is known of his movements until he was seen by the engineer. His conduct when he was aroused by the alarm-whistle was certainly very strange. Unexplained, it certainly has the appearance of the conduct of a suicide or person of unsound mind. The evidence, however, would seem to forbid such a conclusion. He was a man advanced in life—sixty-one years of age, thrifty, possessed of a competent livelihood, free from debt, of good moral character, and happy in his family and social relations. He was never suspected of insanity by any who knew him.
It may be that he was intoxicated. It is true that no witness testified to having seen him drink any intoxicating liquor while he was at the station on the day the accident occurred, and his son says that he was sober when he left the station. But it was proved that there were two stores at the station, at both of which liquor was kept for sale. Ills son kept one of the stores. His father was not in his company during a part of the day. It may be that he procured liquor from the other store, or some other place, without his son’s knowledgé. It was in proof that, while not a man of dissipated habits, he had been known to drink too freely, and, in fact, to *827 get drunk. Possibly he inay have drank too much before he left the station—the effects not being visible to others—and be may have been thus overcome walking down the track and have become stupefied. He wore a pair of tight shoes, and when found, after the accident, he had on one shoe only. It was proved that on the preceding Sunday he walked in the same pair of shoes to a prayer-meeting, and on the way he took oft his shoes and walked about three-quarters of a mile with his socks only on his feet. May it not be, that after walking a half-mile on the track he sat down, pulled off his shoe to relieve his foot, and while so situated became stupefied and insensible to the dangers which threatened him ? It must be confessed that these are all, more or less, conjectures. The real cause of his strange conduct will probably never be known with any degree of certainty; but there are two propositions which, in my judgment, are sufficiently established by the evidence.
Hirst. But for the negligence or w'ant of ordinary care and caution of the plaintiff’s intestate the misfortune— the loss of his life—could not have happened.
He was in fault in going upon the track of the railroad. The defendant was the owner in fee simple of the road, and entitled to the full, free, exclusive and uninterrupted use of it. This the deceased knew. He had no right to use the track at all as a way to reach his home, but he entered upon it on this occasion under circumstances wrhich indicated that the use of it would be attended with rather more than ordinary peril. He did not attempt merely to cross the track when no train was near, nor to walk along it when no train was approaching; but, having the convenience of a road leading directly to his house, and with a full knowledge that the train would be due at the station in thirteen minutes according to the schedule time, he voluntarily and without license started upon the track in the direction from *828 "which the expected train was to come, and which, if it arrived at the usual time, he would almost necessarily meet before he reached the point at which he would leave the track for his home. But for this wrongful ^ incautious conduct on his part the misfortune which betel him could not have happened,
Second. The defendant exercised ordinary care and cauti°n> an(l could not, by the exercise of such care and caution, avoid the mischief which happened.
It is not necessary to recapitulate the evidence which establishes this proposition. It is sufficient to say that 'the engineer did not see deceased on the track until it was too late, notwithstanding the prompt and energetic use of all the means in his power to avert the mischief which happened, and that he did not see him sooner was owing to causes from which no negligence in the defendant or its agents can be properly inferred.
If there had been no demurrer to the evidence in this case, and the jury had rendered a verdict for the plaintiff, it wrnuld have been the duty of the judge presiding at the trial to set aside the verdict, on the ground that the evidence was plainly insufficient to warrant it.
It follows that, in my opinion, the judgment of the circuit court is erroneous and should be reversed, and that final judgment should be rendered by this court on the demurrer to evidence in favor of the defendant (the 'plaintiff' in error here).
The other judges concurred in the opinion of Burles, J.
The judgment was as follows :
This day came again the parties by their counsel, and the court having maturely considered the transcript of 'the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing *829 and filed with the record, that the matter shown in evidence to the jury is not sufficient in law to maintain the issue on the part of the plaintiff (defendant in error and that the said judgment is therefore erroneous; it is therefore considered, adjudged and ordered, that the said judgment be reversed and annulled, and that the plaintiff in error recover against the defendant in error the costs by the plaintiff' in error expended in the prosecution of the writ of supersedeas aforesaid here, to be levied of the goods and chattels of the intestate in the hands of the defendant in error to be administered.
And this court now proceeding to render such judgment as the said circuit court ought to have rendered, it is further considered, adjudged and ordered, that the plaintiff' take nothing by his bill, and that the defendant go thereof without day, and recover against the plaintiff the costs by the defendant about its defence expended, to be levied of the goods and chattels of the intestate in the hands of the plaintiff to be administered; which is ordered to be certified to the said circuit court of the county of Prince Edward.
Judgment reversed.