JOHN J. WATTS AND RICHARD J. WATTS v. THE TITTABA-
WASSEE BOOM COMPANY.

[See 47 Mich. 540.]

*Navigable streams—Obstructions by boom companies.*

A boom company is liable in damages for needlessly or wilfully
obstructing a navigable stream to the hindrance and consequent
injury of persons driving their own logs.

Error to Midland. (Judkins, J.)   Oct. 9–10.—Dec. 21.

CASE. Plaintiff brings error. Reversed.

*M. H. Stanford* for appellants.

*John Moore* and *Hanchett & Stark* for appellee.

SHERWOOD, J.   Plaintiffs during the years 1874, 1875,
1876, 1877 and 1878 were engaged in manufacturing and
transporting square oak timber to market.   The lumber was
obtained in Gladwin county on one of the tributaries of
the Tittabawassee river, and the latter was used by them in
running the timber down to the Saginaw during each of
those years.   It was a navigable stream for floating rafts,
logs and timber from Edenville to its mouth.

The defendant is a corporation ; was organized in 1864,
and during the years above mentioned was engaged in the
business of running, driving, booming, rafting and deliver-
ing logs on the Saginaw, Tittabawassee, Chippewa and Pine
rivers and their tributaries.

The plaintiffs, in their declaration, state their cause of
action in six different counts, and allege, in substance, that
the Tittabawassee is a navigable stream ; that in each of
the five years above mentioned they placed in said river
rafts of square timber to be floated down the river, and that
the defendant obstructed the navigation of the stream by
means of booms placed across the river, whereby the plain-
tiffs' rafts were stopped, delayed, broken up and some of

the timber lost. Each count avers that the defendant placed its booms across the river, intending to prevent the plaintiffs from proceeding down the river with their timber, and the last three counts state that the defendant wrongfully, wilfully and unlawfully obstructed the navigation of the river by means of the booms—the cause of action as stated really being the act of the defendant in obstructing the navigation of the river without any right to do so, intending thereby to prevent the plaintiffs from floating their timber down the stream.

Defendant pleaded the general issue. The cause was tried by jury; at the close of the testimony the court directed a verdict for the defendant and judgment was entered in accordance therewith. The plaintiffs bring error. The return contains all the testimony given on the trial, and the only error assigned is the court's instruction to the jury.

The statute under which the defendant corporation is organized sufficiently apprises the parties of what the defendant may lawfully do, and the evidence shows it has been conducting the business authorized ever since its organization, and there is no question made by the parties but that its field of operation extended to those portions of the Tittabawassee river where the obstructions complained of were made or occurred.

The defendant in doing its business placed a boom across the river a short distance above the village of Midland, known as Pier boom, and at a point about seven miles above the mouth of the river placed another, known as the Bryant trip, these two being among, if not the only, obstructions of which the plaintiffs complain. At least, it is claimed that the booms thrown across the river at each of these places caused the other obstructions from which plaintiffs claim to have been injured.

The logs which the defendant had charge of were placed in the river above the booms, many of them coming in from the tributaries of the Tittabawassee, and the plaintiff's logs when they entered the river, were preceded by several miles of logs several feet deep.

The Tittabawassee empties into the Saginaw river, and it is the business of the defendant to take the promiscuous mass of logs, float them down the Tittabawassee, and at the booms separate and put them into rafts, and in that condition deliver them to their respective owners along the Saginaw river or at the mills.  The defendant has no control over the amount of logs to be put in the river, nor the manner of putting them in, and neither puts in any logs itself nor causes them to be put in.  Many times it is necessary to stop the mass of logs going down the Tittabawassee river to allow those in the tributaries to enter it, and vice versa, in order to secure to each person an equal chance in the use of the river, and when this is done, and the river is full, the tendency is to cause a jam.  In order to separate the logs and raft them, it is frequently necessary to place them in side or rafting booms, and many times considerable river space is required for that purpose.  The Bryant trip is used for the purpose of stopping the logs and letting them through into the side booms.

It does not appear from the evidence that the Bryant trip was used for any other purpose.  These booms were evidently intended to facilitate the navigation of the stream, and are supposed to be placed at the most advantageous points for that purpose.  We think the proofs clearly show that the logs could not be safely handled without placing them into rafts on the Tittabawassee river.  When stopped, the logs form into a jam or dense mass, piled one upon another, from bank to bank, so that a raft of timber above or in the jam cannot be moved any faster than the mass of logs until those below have been displaced or carried down the stream.  The evidence shows the plaintiff's timber rafts were run down into the jams which formed above the Pier boom and Bryant trip, and were then delayed, and were moved no faster than the logs forming the jams.  No other obstructions are complained of.  It is claimed by defendants that the testimony tends to show that whenever rafts reached the boom or trip they were permitted to pass with as little delay as possible.

The statute under which the defendant corporation was organized, authorized the formation of corporations for the purpose of "running, driving, booming and rafting logs" on any of the streams or waters within this State. They have power to acquire, use and hold, by lease or purchase, all such real and personal estate as may be necessary for the purpose of carrying on the business of the corporation. The Act further provides that such boom or booms shall be so constructed and used, as far as practicable, as to allow the free passage of all boats, vessels, crafts, logs, timber, lumber and all other floatables along such waters. Power is also granted to make all necessary contracts " for driving, boom_ ing, rafting and running logs." Sess. L. 1864, p. 23, secs. 1 and 14. By the Laws of 1873, section 14 was amended so that the proviso above referred to reads as follows : "and provided further, that such boom or booms shall be so constructed, and so far as practicable used, as to allow the free passage of boats, vessels, crafts, logs, timber, lumber, or other floatables along such waters." This section was again amended in 1875, but the foregoing provision in relation to the construction of booms, was retained, and has since remained the same. Laws 1875, p. 30 ; Laws 1881, p. 237.

Under its charter the defendant has the power and right, on the streams where it may lawfully do business, to construct, use and maintain all necessary booms for its business, provided that such booms shall be so constructed and, so far as practicable, used as to allow the free passage of boats, vessels, logs and other floatables along such waters. The location, extent, manner of construction and number, is left to the determination of the defendant, subject only to the restrictions mentioned.

Any person has a right to use the stream to the extent he may choose, provided he does not encroach upon the rights of any other person to do the same thing. Navigable streams are to be used in common and for commercial purposes, and no one person or company of persons, under enactments of the Legislature or otherwise, have the right to monopolize their use. They may be used by all persons having business

upon them, and when many persons make use of them, and to the extent of their full capacity, there is danger from encroachments upon each others' rights, and it is entirely proper for the government to regulate their use under such circumstances, and it may very properly authorize corporations to look after and control, within reasonable regulations, their use by persons having business thereon. For this purpose the defendant corporation was organized, and, while acting under proper and reasonable restrictions in the performance of its duties, its action is legal, and it cannot be held liable, though damages result therefrom.

The statute does not limit the extent of the business which may be done upon the rivers. The defendant, therefore, is obliged to accept the condition of things as it finds it, and drive down the river and separate and deliver the logs and timber in the shortest time possible under the circumstances, when there is water sufficient to float the property in its charge. So far as relates to the use of the stream, defendant has the same rights, no more and no less, than each individual would have for whom it does business had they not employed the defendant to drive their logs.

As we have already said, the defendant puts no logs in the stream, neither is it authorized so to do. The preservation of a free passage of boats, logs and other property down the river is not made a condition to the company's doing business, but it is required to preserve such "free passage as far as practicable." To say as far as possible would be, in some instances, to destroy the usefulness of the stream almost entirely, because the amount of logs carried down the stream might be so limited that no one person's could touch those of any other, and thus would be defeated the object of the law in making the stream a public thoroughfare, and the best interests of all the parties seriously jeoparded.

In determining whether in any particular instance it is practicable to preserve the free passage required by the law, it is necessary to take into account the size, character and capacity of the stream, and the extent of the business re-

quired to be done upon it. Much more difficulty is experienced in a small or shallow stream than in a large or deep one in preserving a free passage, when the streams are covered with logs, so that what may be considered best, most reasonable and practicable must necessarily depend upon the situation on any given occasion, and the amount of business to be carried on. It will also be readily discovered that when jams occur the logs must cease to run, and no man can say to another: "You had no right to put your logs into the stream," and it is equally true no man desires to obstruct the free passage of his neighbor's or his own logs. Neither can logs, after they have gone promiscuously into the river, be selected out and each parcel placed in the raft or delivered to the owner, until they have been stopped long enough to be conducted into side booms for that purpose. These things are necessary to be done in carrying on the business of the defendant, and if proper care and expedition are used in so doing it is all that can be expected of defendant. By the defendants so doing, navigation of the stream is aided and improved and the transportation of property of all persons along the rivers greatly facilitated, and it is evident that without such aid the business in the vicinity of these rivers in the great lumber regions of our State could not be done.

It has always been proper to stop a mass of logs in a river for the purpose of securing the rights of several owners of the same, or to prevent their loss or destruction. Of course, when this is done on the small streams, navigation is of necessity for the time being impeded. The only question which can arise in such cases is whether the stoppage of the logs was done in a reasonably prudent manner, and was continued no longer than was necessary to accomplish the object. If there has been want of care and diligence, or any neglect on the part of the company, either in doing the business or in constructing the booms, and damage ensued, then it will be liable for the injury or damage which is the immediate and necessary consequence of such want of care and diligence, negligence or wrong.

If the defendant has any power which an individual has not, it is the right to construct booms in the streams necessary to facilitate the running of the logs, but not to delay them. Of course, whatever was done in this case was intentionally done by the defendant, and although no wrong or injury was intended by defendant to plaintiff, still, if such wrong was committed, it cannot escape the legitimate 'and necessary consequences. During the years in which damages are claimed the defendant took charge of all the logs in the Tittabawassee river below the mouth of the Tobacco, which is a tributary, and in the vicinity of which the plaintiffs manufactured their square timber.

The plaintiffs' testimony tends to show that in the fall of 1874, and during the winter following, they manufactured one thousand pieces of square oak timber, of which nine hundred and fifty pieces were rafted into cribs in the Tobacco river; that on April 7, 1875, cribs containing two hundred and fifty pieces were run out in the Tittabawassee and down the same within four or five miles of Midland pier; that the pier was closed, causing a jam at that point, and by this obstruction the cribs were delayed six weeks. After passing this pier they ran down to Baily's bridge, when they encountered another jam caused by the closing of Bryant trip. At this point they were delayed eight weeks, and thereafter they were four weeks in passing Bryant trip. So that they were from the 7th of April until about the 1st of September in running these two hundred and fifty pieces from Edenville to the mouth of the Tittabawassee. About the 15th of May, 1875, the remaining seven hundred pieces entered the Tittabawassee from the Tobacco, and after running down two miles below Edenville struck a jam caused by the closing of Midland pier. Of this parcel, 180 pieces were run through Bryant trip during the summer, the cribs having been broken in the jams; about 100 pieces were lost; 420 pieces were at great expense recovered from the bottom of the river and from the shores where they had been crowded out by the jam, and passed the Bryant trip about the 1st of July.

52 MICH.—14

This statement of the operation of the defendants with the plaintiff's timber sufficiently indicates its doings in each of the other seasons claimed for, and we therefore omit further detail. We may, however, say that we discover nothing in the record showing any unusual stage of water in the Tittabawassee during either of the years mentioned.

The record also shows that plaintiffs were prevented from opening the pier or booms and breaking the jams by the defendant, and thus were obliged to take the timber below Bryant trip at such times as defendant permitted them to pass that point. There is testimony tending to show that if the plaintiff had been allowed to break the jams and open the booms as requested, and as they might have done for the years 1875, 1877 and 1878, they could have run their timber from the mouth of the Tobacco to the mouth of the Tittabawassee, without the loss of any timber, within one week. There is also evidence tending to show that with a liberal expenditure of money on the logs in the Tittabawassee river in each of the years in which plaintiffs claimed to have been injured, the defendant might have greatly expedited the running of the plaintiff's timber.

It is claimed in the plaintiff's declaration, on the first count, after making the other proper preliminary averments, that said defendant, intending to prevent said plaintiffs from proceeding with their said timber in, upon and along the waters of the Tittabawassee river, and to cause them great injury and damage by its agents and servants, did abridge and obstruct and dam said river at many points in such a manner as to greatly hinder, delay, prevent and prejudice the plaintiff in the free navigation thereof by placing booms across the river for that purpose,   *   *   * whereby they suffered great damage. The second and third counts contain the same averments. The last three counts aver that the defendant by its agents and servants wrongfully, willfully and unlawfully did dam, abridge and obstruct the Tittabawassee at many points by placing booms across the river, intending thereby to prevent the plaintiffs from proceeding along the river with their timber and to cause

them great injury and damage, and that they did thereby sustain great damage.

Under the declaration containing these averments the circuit judge held in his direction to the jury that the law gives the defendant the right to impede navigation to a certain extent, but no further than is necessary for carrying on the business it authorizes. The company has a right to take the logs down, and if, after the exercise of reasonable skill and diligence, it delays parties above, it is not responsible. The court further stated, "Now, a man who commences a suit, must commence it upon a theory which will make the defendant liable if the facts are proved. If the plaintiff in this case can recover, in my judgment it must be upon the theory that, in the exercise of the right given by law to this boom company, they were guilty of negligence, they were guilty of carelessness, they did not do what the law granted them the right to do, or did it in an unlawful manner, and in consequence of that fact the plaintiff suffered damage." And because the declaration did not recognize the right of defendant upon the river, and no negligence was charged therein, and none claimed to be shown by the plaintiff, the circuit judge directed the verdict for the defendant.

All obstructions to the free use of navigable streams are prohibited by the law of the land. Angell on Water-courses, 554; *Hart v. City of Albany* 9 Wend. 571. Constitution art. xviii, § 4. Still such free use or navigation does not necessarily mean navigation of the streams in their natural condition unobstructed and unimpeded. *Benjamin v. Manistee River Improvement Co.* 42 Mich. 634.

The State may authorize the improvement of these natural highways by water; but it is precluded from doing so itself by article xiv, § 9 of the Constitution. This defendant was not authorized to improve the Tittabawassee river, but simply to use it, for other parties, as a natural person might do, to the extent of the powers granted to the defendant. This defendant corporation was created for the purpose of aiding and facilitating the floatage of logs and timber along the Tittabawassee river, among others; and the statute does not authorize it to retard or destroy such floatage. Its busi-

ness was not to improve the channel of the river, but relieve its waters of their burden of logs. To obstruct the natural and free passage of cribs and rafts of logs by the entire obstruction of the channel, was prima facie unauthorized and wrong. It was a public nuisance. *Hall v. Tittabawassee Boom Company* 51 Mich. 377. The statute giving the defendant existence, can be invoked for protection only in the performance of lawful acts.

The claim made in the declaration is for acts charged to have been done wilfully and unlawfully, totally obstructing navigation on the river. The acts charged are not those of negligence arising from acts of omission or of commission, but of prima facie positive wrong, acts which the defendant has prima facie no right to do. We think there was testimony tending to support these charges contained in the declaration. It clearly appears by the testimony of plaintiff's witnesses, that in one instance the defendant, by reason of the course pursued, was from the month of April to the month of September in getting his logs from the mouth of the Tobacco to the mouth of the Tittabawassee, when one week would have been sufficient if the obstructions had been removed and the rafts been allowed to pass down with the natural current. The question of negligence was not necessarily involved in the case. The action is case, and the motives of the defendant's agent are immaterial. *Isle Royale Mining Co. v. Hertin* 37 Mich. 332. The defendant sought to justify its action as necessary, reasonable, right and proper in the premises under its chartered authority. This necessarily involved a question of fact, which we think should have been submitted to the jury under proper instructions from the court.

The judgment must be reversed with costs and a new trial granted.

CAMPBELL J. concurred.

COOLEY J. I think there was some evidence in this case to go to the jury, and concur in the reversal.

GRAVES C. J. concurred.