AUGUST TERM, 1886.                    463

Edwards and others vs. The Wausau Boom Co.

EDWARDS and others, Respondents, vs. THE WAUSAU BOOM
COMPANY, Appellant.

*November 26 — December 14, 1886.*

67  463
72   82
67  463
87  150

67        463
59 LRA    73

NAVIGABLE RIVERS: LOGS AND TIMBER. *(1) Authorized booms in
river navigable only for logs: Penalty. (2) Action for delay in
assorting logs: Pleading: Evidence. (3) Instructions to jury:
Misleading general remarks. (4) Sufficiency and suitableness of
booms, etc.*

1. Sec. 1598, R. S., imposing a penalty for the obstruction of a naviga-
ble river, does not apply to the works of a boom company whose
charter gives it the right to detain and assort running logs, when
such works are located at a point where the river is not navigable in
fact except for the floating or driving of loose logs.

2. In an action to recover damages for unreasonable delay and negli-
gence in assorting and passing plaintiffs' logs through the works of
the defendant boom company, the insufficiency or want of repair
of the works was not charged as having caused or contributed to the
damages. Upon the trial witnesses were asked: "How long would
it have required the boom company to divide out the logs  .  .  .
if they had *plenty* of help to do it, and *facilities* for so doing?"
"Did they handle as much as they could have done if they had
had plenty of storage room?" and other similar questions. *Held,*
that such questions were objectionable as calling for opinions
or conclusions without any facts on which they were based, and
also as calling for evidence outside of the issues.

3. General remarks in the charge to the jury in such an action, as to
the public right of navigation of the Wisconsin river, which might
have led the jury to believe that the defendant company had been
guilty of a wrong in closing the river with its works, are *held* to
have been improper, it appearing that the river at and above the
point where such works were located was navigable only for run-
ning logs, and that to make it practicably navigable even for that
purpose works of such a character were absolutely necessary.

4. Under a charter authorizing a boom company "to construct, main-
tain, and keep all the piers and booms which they may deem neces-
sary for the holding, storing, assorting, or dividing of logs," etc.,
the company is not required to keep anything more than *reasonably
necessary* works, in view of ordinary exigencies, or in view of such
conditions as might be reasonably anticipated or expected.

APPEAL from the Circuit Court for *Waupaca* County. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *Silverthorn, Hurley & Ryan*, and oral argument by *Mr. Hurley*. They argued, among other things, that if the defendant's works were of the kind authorized by its charter, neither their utility nor their sufficiency can be questioned by any one save the state alone. *Wis. R. Imp. Co. v. Manson*, 43 Wis. 265; *Pound v. Turck*, 95 U. S. 459; Gould on Waters, secs. 129–134, and cases cited. The defendant is not liable for errors of judgment. *Chappell v. Oregon*, 36 Wis. 145; *Brown v. Collins*, 53 N. H. 442; *Brown v. Kendall*, 6 Cush. 292; *Burroughs v. Housatonic R. Co.* 15 Conn. 124; Gould on Waters, sec. 250. The power and discretion to plan the improvement was given to the defendant by the state. It made the plan and changed it from time to time as it " deemed necessary." It cannot be held liable if the plan was imperfect. *Child v. Boston*, 4 Allen, 41; *Merrifield v. Worcester*, 110 Mass. 216; *Darling v. Bangor*, 68 Mc. 111; *Detroit v. Beckman*, 34 Mich. 125; *Van Pelt v. Davenport*, 42 Iowa, 308; *Steinmeyer v. St. Louis*, 3 Mo. App. 256. The defendant is a public agent. *Kendall v. Stokes*, 3 How. 98. An exercise of defendant's best judgment in constructing its works is ordinary and reasonable care, and more is not required. *Ballou v. C. & N. W. R. Co.* 54 Wis. 267, 268; *Beatty v. Central Iowa R. Co.* 8 Am. & Eng. R. Cas. 210; *Townsend v. Susquehannah Turnpike Co.* 6 Johns. 90; *Weld v. Proprietors*, 6 Me. 93; Gould on Waters, sec. 258.

For the respondents there was a brief signed by *Cate, Jones & Sanborn*, attorneys, and *Geo. R. Gardner*, counsel, and oral argument by *Mr. Cate*.

ORTON, J. The complaint in this action first sets forth the incorporation of the defendant under ch. 45, P. & L.

Laws of 1871, and the building of the piers and booms according to the provisions of the charter, and the rebuilding, repairing, and strengthening of the same, and correctly states that the company must at all times keep an open channel for the passage of all boats, barges, and rafts of timber or lumber (if there be any), and shall have such reasonable time as may be necessary to *assort* and pass through their booms all such logs and timber as are not to be retained therein; and all logs and timber not requested to be retained therein shall, with reasonable diligence, be passed through said booms to the river below the same. It is alleged that the principal use of the Wisconsin river above said booms is the floating of loose logs and timber and in drives, and that many millions of feet (and the evidence shows it to be two thirds or three fourths of the whole) of such logs and timber are annually stopped at Wausau, near said booms, to be manufactured into lumber at that point, and the balance are assorted and passed on below to mills at Stevens Point, Grand Rapids, and Port Edwards on said river. The further facts stated are, briefly, as follows: The plaintiffs were manufacturers of lumber and shingles at Port Edwards, out of logs cut on the river above said booms, which were floated down to said booms to be therein separated from logs which were to remain in the same. The plaintiffs were the owners of 6,000,000 feet of logs, which arrived at said booms on or before the 1st day of June, 1883, which were intended to be manufactured into lumber and shingles that season, and the defendant company neglected and refused to pass said logs through said booms within a reasonable time after request, and neglected to assort and divide and pass the same until the 1st day of July of that year, although they were ready to be so assorted, divided and passed, and 3,000,000 feet remained in said booms for several weeks, and could not, therefore, be manufactured that season, and other logs remained

scattered along the river below, and others delayed until late in the fall, to the damage of the plaintiffs of $5,000; and the plaintiffs thereby lost the use of their mills, to their damage of $5,000, and thereby an expense of driving their logs to their mill of $5,000 more, and thereby 3,200,000 feet of said logs became depreciated in value one dollar per thousand feet, and there was a large loss of profits on the lumber by the delay.

For a second cause of action there are similar averments as to over five millions of feet of logs within said booms belonging to the plaintiffs in 1881, and damages of $11,000, besides profits, etc. In this count there is injected an allegation that, by reason of the insufficiency and want of repair of said booms, and negligence and unskilful management of the same by the defendant, a part of said booms broke, thereby mixing and intermingling about 1,000,000 feet of the plaintiffs' logs with many million feet of logs in said booms belonging to owners of logs at Wausau, which caused an additional expenditure of $500 to remedy, and 600,000 feet were left in the booms.

The last count charges the obstruction of the navigation of the river by said booms in violation of sec. 1598, R. S., and the plaintiffs demand the penalty of $25 per day during such obstruction.

As to the last cause of action it is sufficient to say that the river at that point was not navigable in fact, except for the floating or driving of loose logs; and in respect to them the river must be obstructed in order to assort the logs of different owners, and this exception is made in the statute, and the legislature incorporated this company for that purpose, in order to facilitate the navigation of the river for that purpose, and the plaintiffs were as much benefited thereby as any one else. The penal statute has no application to such works at such a place, and it does not appear that the penalty was claimed on the trial.

In respect to the allegation of insufficiency or want of repair of the defendant's works, and the $500 damages, the claim was unimportant and not relied on. The only breach of duty on the part of the defendant charged, and for which the plaintiffs are entitled to recover, was that their logs, during the seasons of 1883 and 1884, were not assorted and passed through said booms with reasonable diligence by the defendant. In respect to this main cause of action the insufficiency or want of repair of the defendant's works is not charged in the complaint as an element, even, of such breach of duty. It is negligence, or want of reasonable diligence, or unreasonable delay, by the defendants in the use and management of their works and in handling the logs of the plaintiffs in said booms alone, that is complained of. This is clear enough. If the insufficiency or want of repair, or the faulty construction, of the defendant's works had been charged as having caused or contributed to the plaintiffs' damages, a very wide and different and most important issue would have been presented. It would have had to be determined upon the opinion and judgment of competent experts, and the question would have been whether the faulty construction was caused by a defective plan, or in carrying out a sufficient plan in a negligent manner, or whether either was by the want of reasonable judgment or of ordinary care. *Wis. R. Imp. Co. v. Manson*, 43 Wis. 265, and cases cited in appellant's brief. And another important question might have arisen, and that is, Were the works *reasonably* well constructed to meet ordinary exigencies, and such a run of logs down the river as was common or to be reasonably expected? and whether the run of such a vast quantity of logs, in the times stated, was not very extraordinary and uncommon, and not to have been reasonably expected when the works were constructed. But no such issue is presented by the pleadings, and that is sufficient. Having an understanding of the issues, we are

now prepared to pass upon the exceptions to the evidence and to the charge of the court.

The second question objected to on the trial was: "How long would it have required the boom company to divide out that jam of logs at Wausau if they had *plenty* of help to do it and *facilities* for so doing?" This was objected to as being immaterial and incompetent under the pleadings. This question was clearly incompetent as being an opinion without a single fact. What was "plenty of help to do it"? What idea had the witness in his mind, that he did not disclose to the jury, as to how many men constituted *plenty* of help? The whole question is determined by the witness, by giving his opinion without giving any fact to base it upon, which could only be determined by the jury upon facts. The whole question is virtually taken away from the jury. And so as to the other member of the question, for it is twofold, "if they had facilities for so doing." What facilities? Why, such facilities as the witness had in his mind. He is the sole judge of the necessary facilities. The jury are not allowed to pass upon the question at all. The witness has in a single word settled the question, without testifying to a single fact involved in the question but not stated or asked for. It is a mere conclusion of facts without facts. These brief and very comprehensive questions involve many questions and many facts. How many men had the defendant? Could any more men have worked to any advantage? Where could they have worked, and what could they have done? Could they have been obtained, and where, and at what cost? And so as to facilities. What facilities? Larger and stronger works, extending further down the river, or higher up? Should there be new dams built, and new reservoirs made, and where? Was the whole plan defective, and should the works be reconstructed, and how? Some of these things the witness is presumed to have had in his mind, but what ones

no one knows. In this short method the duty of the company is to be determined for the jury. We spend more time on this question, because it was repeated many times. The witness enlightened the jury a little by saying that which was not responsive to the question: "If they had *storage room and* plenty of help, I think they could have divided one and a half to two millions a day." How indefinite and unsatisfactory this is to determine the duty of the company! The full measure of the duty and responsibility of the company is fixed by the witness at one dash, and its liability determined without the intervention of the jury. The impropriety of such a question is apparent without argument or the citation of authority.

The next question is equally objectionable for the same reason: "You think that is a *fair* amount for a boom company, situated as they were, to be able to divide in one day." The witness might as well have been asked: Was the company negligent? Did they divide and pass the plaintiffs' logs in as *reasonable* time as might be *necessary?* The next question is liable to the same objection: "Did they handle as much as they could have done if they had had plenty of storage room?"

These questions were repeated, with slight variation of language, over thirty times to various witnesses. Indeed, almost the only testimony relating to the negligence of the company was elicited by a short answer to such a question, and the jury was relieved from any inquiry into the facts. The conclusion of the witness was the verdict of the jury. It will be observed that most of these questions relate to the sufficiency and manner of the construction of the works of the company as the principal elements of its negligence and unreasonable delay. Some of the questions are a direct inquiry into the insufficiency and want of repair of the works, and the jury may be presumed to have predicated their verdict upon the negligence and delay occasioned by

the insufficiency of the works, more than by the manner of operating and managing them in respect to the plaintiffs' logs, which latter is the only negligence and unreasonable delay charged in the complaint. In this respect there was a complete mistrial of the main issue, as we have seen by consulting the complaint. It is admitted in the complaint that the piers and booms were constructed for the purpose named in the charter, and have at various times been rebuilt, repaired, and strengthened, and that the defendant kept them up and maintained the same, without any complaint of their insufficiency or want of repair at the time. This was the most material and substantial objection to these questions, and this objection was made "under the pleadings," or in view of the complaint. In this respect all of these questions were clearly incompetent as eliciting evidence, as it did, outside the issues in the case.

The defendants were not called upon to defend the construction or sufficiency of their works under their charter. It was only their conduct in the operation and management of their works (conceded to have been constructed according to their charter) in handling the plaintiffs' logs that were in issue "under the pleadings." It was only in view of the *facilities* they had for assorting, dividing, and passing the plaintiffs' logs through their boom that they are charged with negligence and unreasonable delay, and not the facilities they ought to have had. And yet the questions are: "If they had had the facilities;" "If they had had storage room;" "If they had had another dam," etc.,— and the evidence rested upon such conditions. These questions, then, were objectionable both in form and substance, and overruling the defendant's objections to them was clearly error.

The evidence clearly showed that this was a most extraordinary run of logs and a *jam*, which could not have been taken care of as easily, or assorted and passed as rapidly, as when there was a less number of logs coming down together

to the boom, with any ordinarily sufficient works. One of the plaintiffs' witnesses testified that there were more logs coming down than the company had room to take care of. The question, therefore, as to the sufficiency of the works, if it had been in issue under the pleadings, ought not to have been, "with sufficient facilities," or with sufficient works, which was the same thing, but with *reasonably* sufficient works,— works usually and ordinarily sufficient. The questions were therefore improper, even if the sufficiency of the works had been in issue under the pleadings. The company, under their charter, was authorized "to construct, maintain, and keep all the piers and booms which they may deem necessary for the holding, storing, assorting, or dividing of logs," etc. Sec. 10, ch. 45, P. & L. Laws of 1871. This language might not leave the whole question of such necessity to the company to decide for itself, but it most certainly does not require anything more than reasonably necessary works, in view of ordinary exigencies, or in view of such conditions as might have been reasonably anticipated or expected. This would have been the issue under the complaint if the sufficiency of the works had been questioned at all. Perhaps too much space has been given to the consideration of these questions, which were so obviously improper. But one question asked and objected to illustrates the above rule: "State how many logs it is *competent* to pass through the Wausau divide with the best facilities for dividing that the *circumstances admit of* their providing there at that time?" The answer is pertinent: "Well, in my judgment *a boom might be made* at Wausau that would pass them at the rate of six millions a day."

In respect to the charge of the court to the jury, the exceptions are sufficient to call in question the general and very extended remarks of the court upon the navigability of the Wisconsin river for boats, barges, and rafts, and the subordinate right of the company to the public right of

navigation; and it is repeated more than once, in substance, that the company " must take care that it does not materially interfere with the superior right of all the people to navigate the river." The jury may have received the impression that the river at that point must not be closed, even against the plaintiffs, so as to prevent them from running their logs down the river without obstruction, or so that any one might navigate the river at that point with boats, vessels, barges, and rafts. The legislature gave the company the right to construct their piers and booms with a view of assorting, dividing, and storing logs running loose or in drives in the river above that point, in view of the condition of the river at and above that point. The complaint states, and the evidence shows, that the river was not navigable above that point for anything but running logs in this way. To make it practicably navigable for even such purpose alone, booming works for stopping, holding, and assorting the logs so running free in the river were absolutely necessary. The works, therefore, may be constructed without any reference to any other navigability of the river, and the river may be — indeed, must be — entirely closed, so as to prevent the unobstructed passage of such logs. It is for the interest of the plaintiff, as well as that of all other log-owners in the drive, that these works shall obstruct and stop the passage of their logs until they can be assorted, divided, etc., and the only question is, in any case, whether the works are so constructed and so managed that the logs of the various owners are not detained longer than reasonably necessary. The general question of free navigation has practically very little, if anything, to do with the real questions in such an action; and the cardinal, well-established, and high-sounding doctrines of the free and unobstructed navigation of the waters leading into the two gulfs, might lead the jury to think or get the impression that the defendant had been guilty of a *wrong* in so closing up the

river against the navigation of the world. The jury may have been thus drawn away from the plain and simple issue in the case. In all other respects, and except as it may have presented to the jury the question of the sufficiency of the defendant's works, the charge seems to have been free from objection.

It is unpleasant to reverse a judgment in a case involving so much expense of trial, and having such a large volume of testimony, and so elaborately tried and argued here by such able counsel, and yet the, errors considered are too glaring and important to be overlooked.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.