[No. 8521.   Department One.   January 21, 1910.]

THE STATE OF WASHINGTON, *on the Relation of Grays Harbor Boom Company et al., Plaintiff*, v. THE SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

LOGS AND LOGGING — EMINENT DOMAIN — PARTIES PLAINTIFF—JOINDER—ALLIED CORPORATIONS. A boom company at the mouth of a river, and a driving company floating down logs by splash dams and artificial freshets, may properly join as parties plaintiff in an action to condemn overflowed lands, where it appears that the overflow is caused by the concurrent acts of the driving company in creating the freshets and of the boom company in choking the mouth of the river with logs and retarding the current, and both companies are jointly interested in gathering and holding logs in the river.

LOGS AND LOGGING—EMINENT DOMAIN—PLATS—EFFECT—STATUTE—CONSTRUCTION. Rem. & Bal. Code, § 7121, providing that a driving company shall file a plat of any of the rivers and lands contiguous thereto as are proposed to be appropriated, does not prevent a company from condemning the right to damage by artificial freshets

[1] Reported in 106 Pac. 481.

lower lands outside of the plat, where the company was not seeking to improve the river or exercise its granted powers at the point where the injury occurs; as the object of the act was that of notice to riparian owners where the improvements were to be made.

SAME. "Contiguous lands" in such act is not to be restricted to lands "next to" or "touching" the river.

Certiorari to review a judgment of the superior court for Chehalis county, Irwin, J., entered December 14, 1909, upon sustaining a demurrer to the petition, dismissing a condemnation proceeding. Reversed.

*J. B. Bridges*, for relators.

*W. H. Abel*, for respondents.

MORRIS, J.—The relators are allied corporations, having the same stockholders and the same management. The driving company is engaged upon the upper stretches of the Humptulips river, in improving it for log driving and creating splash dams and artificial freshets for the purpose of driving the logs down the river. It has filed its plat along all that portion of the river where it has purposed to make any improvement or create any splash dams. The boom company is located near the mouth of the river, and its purpose is to catch the logs driven down the river by the driving company, on the natural flow of the river or by splash dams and artificial freshets, and to sort and store the same in its booms. The respondent C. H. Pealer is the owner of lands adjoining or in close proximity to the river, about a mile or more above its mouth, and so related to the river as to be overflowed and damaged whenever logs are driven to the boom by artificial freshets. These lands are within the plat of the boom company. The respondent brought an action against the driving company and the boom company as joint defendants, to recover damages for the overflow and other injury to his lands, and recovered judgment therefor, which upon appeal was sustained in this court. *Pealer v. Grays Harbor Boom Co.*, 54 Wash. 415, 103 Pac. 451. The relators thereupon

commenced an action to condemn the lands of respondent so as to give them the right to overflow and damage same, to which complaint a demurrer was interposed, which was sustained, and relators, electing to stand upon their complaint, sought and obtained this writ.

The court below recites in its judgment, which it entered upon relators refusal to plead further, that the action could not be maintained, for two reasons: (1) Relators could not join in the action; (2) the driving company had no right of action, because its plat did not cover respondents' lands. These are the only questions raised here, and we will treat them in the same order.

It is manifest, from the admitted facts before us, that these two companies are engaged in a common enterprise; the one gathers the logs upon the upper river and drives them to the booms of the other, the purpose of both being the use of the river in its natural and in the artificial condition created by them, to convey and hold the logs for market. It is also apparent that, whenever artificial freshets are created by the driving company, the water thus released will not confine its overflow and damage to lands within the driving company's plat, but will continue on down the river, overflowing and damaging all lands so related to the river that its banks are insufficient to confine these freshets to the proper channels. The river is tidal for some distance inland from its mouth, and whenever the booms of the boom company are filled with logs and the river above the boom filled with logs on their way to the boom, riding the natural flow of the river, and the driving company upon the upper river with its splash dams and artificial freshets causes large quantities of logs to be driven upon swiftly flowing water down the river, the waters and logs reaching the lower river and meeting the obstruction of full booms and full river above the booms, unable to pass out in the natural flow, there can be but one result, the retarding of the flow of the water and back flows, and the consequent overflow and damage to adjacent lands not protected

by high and sufficient banks. If it were not for the booms of
the boom company, the artificial freshets with their burden
of logs would pass on down to the mouth of the river and
escape. The booms prevent this being done, and force them
back upon themselves, and are a decided and material factor
in any overflow thus caused, just to what extent it would be
difficult to say.

While it is manifest that the overflow and damage are
caused by the concurrent acts—the artificial freshets in the
upper river for which the driving company is responsible,
and the choked and clogged lower river caused by obstruc-
tions for which the boom company is responsible—yet to sep-
arate these damaging factors and to approximate their re-
spective effects would be a mere matter of speculation. It is
easy to know that the joint and combined acts create an in-
jury. It is difficult, and the law would not require one, to go
further and apportion this injury between the two respon-
sible causes. Such is within the reasoning, if not within the
language, of the court in reviewing the instruction com-
plained of in *Pealer v. Grays Harbor Boom Co., supra.* A
like rule is announced in *Heybrook v. Index Lumber Co.*, 49
Wash. 378, 95 Pac. 324, where it was held that a timber
company and a mill company, both owned and managed by
the same persons and jointly interested in the removal of
timber, could be joined in an action for trespass. The re-
lators had an interest in the subject-matter of the action and
in the relief demanded, and were properly joined as plaintiffs.

Upon the second question presented, the only purpose of
the plat requirement, Rem. & Bal. Code, § 7121 (Laws 1905,
p. 232, § 1), is that of notice. Under its charter and within
the limits of its plat, the driving company was authorized to
enter upon the river for the purpose of removing obstructions,
improving the channel, building wing dams, creating arti-
ficial freshets, and for other designated purposes. Its power
to do so was conditioned upon its filing a plat or survey of
that portion of the river it desired to so improve, and the

notice contemplated by the filing of the plat was to owners of lands along the river and within the plat, so that they might have opportunity to take such steps as they deemed proper to protect their rights as riparian owners. The plat is not initiative of the right to improve the river. It is only designatory of the place where that right will be exercised, to the end that others affected thereby may in their turn exercise rights resting in them. It could never have been contemplated that, in the case of an artificial freshet, damage would be caused only to the lands within the plat. An artificial freshet once created must continue until its force is exhausted. Its injurious effect will be left on all lands along the river, when it cannot be confined within its banks below as well as within the plat. And as the right to damage can only be acquired by condemnation, it is, it seems to us, not only proper but necessary for driving companies, seeking to damage lands beyond their plat by the creation of artificial freshets, to acquire that right by condemnation. A proper regard for the rights of the landowner along the river would require such a construction, and not subject the landowner to a multiplicity of actions in suits for injunctive relief and in suits for damages every time such an injury was threatened or completed.

If the driving company were here seeking to improve the river at the point where it contemplates an overflow of respondents' lands, its failure to file a plat including these lands would be fatal, because it can only exercise its powers within the area for which it has itself asked to have those powers conferred upon it. But it is here seeking, not the exercise of any of its granted powers, but—since the thing incidental and accessory to its granted powers must necessarily result in damage to others, and without which damage its granted powers cannot be exercised—that the damage thus resulting be finally fixed and determined. If respondents' position be maintained, it would necessarily mean that any driving company operating upon the upper stretches

of a river, such as the Humptulips, must file a plat or survey embracing within it all lands adjacent to the river and subject to its overflow. Such a construction does not appear to us to be tenable. Neither is the use of the word "contiguous," as used in the statute, Rem. & Bal. Code, § 7121, to be given a restricted meaning of "next to" or "touching." Lands not bordering upon the river nor forming its banks, but subject to damage by its overflow, are as much entitled to protection from damage caused by overflow as is the land next to and forming the bank of the river.

The judgment is reversed, and the cause remanded with instructions to overrule the demurrer.

CHADWICK, FULLERTON, and GOSE, JJ., concur.