[No. 8738.   Department One.   June 1, 1910.]

THE STATE OF WASHINGTON, *on the Relation of C. H. Pealer,*
*Plaintiff,* v. THE SUPERIOR COURT FOR CHEHALIS COUNTY
*et al., Respondents.*[1]

NAVIGABLE WATERS—OBSTRUCTION—LOGS AND LOGGING—BOOMS—NUISANCES—EMINENT DOMAIN. Rem. & Bal. Code, § 7122, granting boom and driving companies the right to construct booms and splash dams for the driving of logs and timber products, under the right of eminent domain, provided that the "outlet" of the stream is not obstructed, by necessary implication gives the right to obstruct restricted navigation in small streams at times, where such use is necessarily an exclusive one; and such obstruction would not fall within the general statutes defining nuisances, or be a valid objection to eminent domain proceedings to condemn the right to overflow lands.

NAVIGABLE WATERS—NAVIGABILITY—FEDERAL STATUTES. A stream is not navigable in the Federal sense, within 26 Stat. 454, § 10, prohibiting an obstruction to the navigable capacity of waters over which the United States has jurisdiction, where it was only navigable in a restricted sense for a distance of three or four miles at high tide for small boats drawing three or four feet of water.

Certiorari to review a judgment of the superior court for Chehalis county, Irwin, J., entered March 25, 1910, in pro-

[1]Reported in 109 Pac. 340.

ceedings to condemn the right to flood and damage lands for the use of a booming company, after a hearing on the merits. Affirmed.

*W. H. Abel*, for relator, contended, *inter alia*, that a boom company has no right to block a navigable stream. Rem. & Bal. Code, § 7112; *Carl v. West Aberdeen Land & Imp. Co.*, 13 Wash. 616, 43 Pac. 890; *Burrows v. Grays Harbor Boom Co.*, 44 Wash. 630, 87 Pac. 937; *United States v. Bellingham Bay Boom Co.*, 176 U. S. 211; *Hulet v. Wishkah Boom Co.*, 54 Wash. 510, 103 Pac. 814, 132 Am. St. 1127. Where the rights sought to be acquired by condemnation proceedings cannot in any event be exercised, then condemnation will be denied because same is not necessary in contemplation of law. *In re Brooklyn El. R. Co.*, 11 N. Y. Supp. 161; *Chicago v. Law*, 144 Ill. 569, 33 N. E. 855; *In re Milwaukee Southern R. Co.*, 124 Wis. 490, 102 N. W. 401; *Minnesota Canal & Power Co. v. Koochiching Co.*, 97 Minn. 427, 107 N. W. 405, 5 L. R. A. (N. S.) 638; *State ex rel. Hulme v. Grays Harbor & Puget Sound R. Co.*, 54 Wash. 530, 103 Pac. 809; *Minnesota Canal & Power Co. v. Pratt*, 101 Minn. 197, 112 N. W. 395, 11 L. R. A. (N. S.) 105. The diversion of waters from a navigable stream to such an extent as to appreciably impair its navigability is an obstruction. *United States v. Rio Grande Dam & Irrigation Co.*, 174 U. S. 690. The obstruction of a navigable river is a special injury to any person desiring to navigate, or who might have occasion to navigate it. *Dawson v. McMillan*, 34 Wash. 269, 75 Pac. 807; *Judson v. Tide Water Lumber Co.*, 51 Wash. 164, 98 Pac. 377; *Sholin v. Skamania Boom Co.*, 56 Wash. 303, 105 Pac. 632.

*Bridges & Bruener*, for respondents.

GOSE, J.—The respondents are allied corporations, having the same stockholders and a common management. The case was before this court in another form. See *State ex rel. Grays Harbor Boom Co. v. Superior Court*, 57 Wash.

71, 106 Pac. 481, for a more complete statement of the facts. The boom company has a boom extending up the Humptulips river from its mouth for a distance of a mile or more. The driving company has its splash dams forty and fifty miles respectively above the mouth of the river. The petitioner owns land contiguous to the river and a small slough called Berg's Slough, about one-fourth of a mile above the boom. The Humptulips river is a tidal stream and flows into Grays Harbor. The object of the action is to condemn the right to flood and damage the petitioner's land. The court found:

"That the smaller boats of Grays Harbor, drawing from three to four feet of water, can get into the mouth of said river and up the same for a distance on the tides; that the said river is navigable in a restricted sense in tide water; that occasionally such smaller boats have been in the habit of visiting said river for special purposes; such as taking in supplies, or scows; that said river is a floatable stream for its entire length; that such boats as can get into the river and navigate thereupon can now, and will in the future be able to go through the channel left open by the said boom and up to the upper end of the boom;"

that in the process of driving logs to the boom, both in flood season and by artificial freshets, the logs become congested above the boom and block the river immediately above it and opposite the petitioner's land, and obstruct navigation at that point "for a considerable and material portion of the year"; that the blocking of the stream to the extent stated "is the necessary result of the operation of the driving company, and that such blocking is unavoidable"; that the contemplated use is a public use; that the public interest requires the prosecution of the enterprise, and that the boom company and the driving company are entitled to condemn the privilege sought.

The petitioner seeks to reverse the decree by a writ of review. The point relied upon is that the ultimate effect of the decree is to permit the boom company and the driving com-

pany to obstruct navigation, and this the petitioner asserts is to permit it to commit a public nuisance. The latest legislative expression touching boom and driving companies is Laws of 1905, page 108 et seq. (Rem. & Bal. Code, § 7122 et seq.). Section 1 of this act, which is an amendatory one, provides that corporations organized for clearing and improving rivers and streams for the purpose of driving, sorting, holding, and delivering logs and other timber products thereon, shall have power, in any of the rivers and streams of the state, to improve and straighten the channel, build wing dams and sheer booms, construct dams and gates or otherwise, for the purpose of storing water with which to produce artificial freshets, and for the purpose of holding logs and other timber products; provided "that no such wing dam, sheer boom, dam with gate or otherwise, shall be so constructed, maintained or used as to in any manner obstruct or impede the outlet of such stream; and provided further, that if any such wing dam, sheer boom, dam with gate or otherwise shall be so constructed, maintained or used as to interfere with the use for any purpose of the waters of any stream so dammed or used, or any of its tributaries, or in any manner to injure or damage any lands adjacent to such stream or its tributaries, compensation for such interference with the use of such water and for any such injury or damage shall be first assessed and determined and the appropriation thereof may be made by the exercise of the power of eminent domain, . . ." It will be observed that the ultimate relief sought in this action, viz., the right to flood the land of the petitioner, is expressly authorized. The only limitation is that the "outlet" of the stream shall not be obstructed.

The court expressly found, and the evidence shows, that there is an open channel along the boom, and that the only obstruction to navigation is above the boom. The evidence shows that the river is navigable in a restricted sense for a distance of three or four miles from its mouth when the tide

is in; that a boat cannot enter the river from the harbor except on the tide, and that it is used for navigation only for particular purposes such as "taking in supplies or scows." This court has held, however, that a stream is navigable in a legal sense if it is in fact navigable. *Dawson v. McMillan*, 34 Wash. 269, 75 Pac. 807. The respondents are engaged in a lawful and important public service. It is only because they are public carriers that they are permitted to exercise the high prerogative of eminent domain. It is apparent that they must obstruct the river above the boom at times, or cease to do business. The legislature, in granting the right to construct a boom and splash dams and drive logs and timber by artificial freshets, by necessary implication gave the right to obstruct navigation at times. It is, as the court found, unavoidable in accomplishing the purpose for which the respondents were created. Necessarily, therefore, they do not fall within the general statutes on nuisances as defined in Rem. & Bal. Code, § 943, and Rem. & Bal. Code, §§ 8308 and 8316. *Burrows v. Grays Harbor Boom Co.*, 44 Wash. 630, 87 Pac. 937, and kindred cases, were injunction suits where property was being damaged without the right to do so having been acquired by purchase or condemnation, and are, therefore, not in point. The use of a stream such as the Humptulips river, a stream two to three hundred feet in width, for the purpose of floating and holding logs, is necessarily at times an exclusive use, and either such right must be conceded or the business of floating logs in such streams must cease. The legislature, we think, contemplated the precise contingency.

It is further insisted that the present use is violative of the Federal statute (26 Stats. at Large, 454, § 10), in that it creates an obstruction, not affirmatively authorized by law, to "the navigable capacity" of the waters of which the United States has jurisdiction. We do not think the river is a navigable one within the purview of the Federal statute, as that term has been defined by the supreme court of the

United States. *United States v. Rio Grande Dam & Irrigation Co.*, 174 U. S. 690. In that case the court quotes approvingly the words of Chief Justice Shaw (21 Pick. 344), as follows:

"It is not, however, every small creek in which a fishing skiff or gunning canoe can be made to float at high water which is deemed navigable, but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture."

As we have seen, the present use of the stream is authorized by the laws of this state, and if the river is not navigable in the Federal sense, the relief sought is not violative of that act.

The decree is affirmed.

RUDKIN, C. J., FULLERTON, and MORRIS, JJ., concur.

CHADWICK, J. (concurring)—Appellant rests his contention upon the proposition "that the right to do an unlawful thing, the creating of a public nuisance, cannot be acquired under the power of eminent domain." He assumes that any obstruction of the right of free navigation in the Humptulips river is a purpresture or blocking of a highway which, under our statute and under the common law, has been declared to be a nuisance. If this were literally true, appellant's argument would be unanswerable; but the question he raises is not new and, where it has been considered by other courts, has been resolved as we have resolved it. The particular question whether the obstruction of a floatable stream is a nuisance, quite naturally came up in those states where the logging industry first assumed commercial proportions. In an early case in Maine, *Davis v. Winslow*, 51 Me. 264, 81 Am. Dec. 573, it was held, that every person has an equal right to the reasonable use of navigable waters as public highways; that what constitutes a reasonable use depends upon the circumstances of each particular case, and that the rights of the parties cannot be defined or regulated with entire precision; that the courts must regard the subject-

matter of the use, the occasion and manner of its applica-
tion, its object, extent, necessity, duration, established usage
of the country, and the size of the stream and its volume.
Waters which are not navigable for ordinary commercial
purposes, or in the "Federal sense," as Judge Gose puts it,
are subject to state regulation and control; and the power of
the state in this behalf will be measured by the necessities of
its commerce as well as the rights of the riparian proprietor.
In *Hamilton v. Vicksburg etc. R. Co.*, 119 U. S. 280, a
similar question to that before us was presented. The navi-
gation of a stream had been wholly prevented for a period of
six weeks, and an action was brought to recover damages by
reason of this obstruction. The defendant company justified
under state legislation, and on the ground that its action
was necessary and performed with reasonable care. The
plaintiff claimed that the state legislation was void because
it violated the compact of the state with the Federal govern-
ment guaranteeing the free navigation of the river. The
state court had held that no recovery could be had under
such circumstances, and this was affirmed by the supreme
court of the United States, that court holding that, in all
such cases and until Congress intervenes and exercises its
authority, the power of the state is plenary, the only limi-
tation being that the acts of those obstructing navigation
at times should not be unreasonable or interfere *unneces-
sarily* with the navigation of the streams. To the like effect
is *Willamette Iron Bridge Co. v. Hatch*, 125 U. S. 1, where
the authorities are collected:

In *Pound v. Turck*, 95 U. S. 459, the judgment of the
lower court was reversed because the jury had been in-
structed, in effect, "that if the structures of the defendant
were a material obstruction to the general navigation of the
river, the statute of the state afforded them no defense though
they were built in strict conformity to its provisions." If the
Humptulips river is not navigable in the "Federal sense,"
these authorities are controlling.

In "*City of Erie*" *v. Canfield*, 27 Mich. 479, Judge Cooley said:

"The fact that the boom embraced a portion of the navigable waters of the Manistee river, capable of being navigated by vessels like this, does not necessarily constitute it a nuisance which may be abated by force. It appears by a map which is in evidence by stipulation, that the boom is in the river between Manistee City (then a considerable village) and the lake, and it would seem from the judge's opinion, which is returned, that considerable evidence was taken to show its necessity, and whether it did or did not constitute an unnecessary impediment to navigation. The circuit judge examined this question elaborately, and reached the conclusion that it did not. The evidence on which he acted is not returned, and the correctness of his conclusion on its weight and credibility has not been argued. It is clear that on a river like the Manistee, which is navigable by steamers for a long distance, but down which logs by the million are floated and gathered in booms every season—where, in fact the principal industry consists in cutting, floating, and manufacturing into lumber the forests in its vicinity, and where the river is more valuable for this floatage than for any other navigation; the necessity and convenience of this floatage must be considered in any rules laid down for the public use of the stream, and the need of booming facilities to render the floatage of value. Indeed, to take away the privilege of booming would be to strike a fatal blow at the principal commerce on the stream; for the vessels which ply between Manistee and other ports are loaded principally with the lumber which the mills along the shores of Manistee lake and river are enabled, by means of the privilege of floating and booming logs upon these waters, to manufacture and place upon the market. It is just and reasonable, therefore and conducive to the best interests of commerce, that the right of navigating the river should be exercised with due regard to the necessity for booming facilities, and the former is not so far paramount as to render the latter a nuisance whenever and wherever it encroaches upon waters navigable by the large vessels which enter this stream. The question whether a nuisance or not, is complicated; it must depend in any case upon the particular facts, and the necessities and

convenience of each interest must be considered and compared before the proper conclusion can be reached."

In *Attorney General ex rel. Muskegon Booming Co. v. Evart Booming Co.*, 34 Mich. 462, Judge Cooley said:

"The questions then are, *first*, whether the appropriation is of something which is common to the public; and if so, then, *second*, whether it is made in a manner or under circumstances which justify or excuse it. In considering these questions it is important that we bear in mind the sort of navigable water we are dealing with. Navigable waters at the common law are those where the tide ebbs and flows; under these the public have a proprietorship in the soil itself; and in various ways the sovereign authority may make use of this ownership for the benefit and protection of navigable rights as well as for other purposes. The Muskegon river, it need hardly be said, it not of this character, and the public have no rights whatever in the soil under it. Neither is it a navigable stream, at least at the point where the alleged purpresture exists, in the more popular sense of that term, for it is only a small stream whose value to the public consists in the use which can be made of it for the purpose of floating logs and lumber. The right of floatage is unquestionably a right which the state should guard and protect; but it is a serious mistake to assume that the private appropriation of a part of the bed of the river would necessarily be either a purpresture or a nuisance. The property taken in such a case is not public but private property, and the owner of the bank, who also presumably owns to the center of the stream, may maintain trespass or ejectment against the taker. If the owner makes no complaint, the public can have neither right nor occasion for any, provided the navigable rights are not abridged. If they are, it is not very manifest how this can be a purpresture. The difference between the highway by land, with its definite limits to which the public right extends, whether the whole is used or not, and the highway for floatage in our small streams, where the public rights have no definite limitations of space except as practicability for use and the occasion for use may give variable limits, as the seasons and the needs of business and traffic may change, is so plain that the difference between an appropriation in the two cases needs only to be mentioned. It requires neither argument nor illustration. The one is a

public grievance of some sort; but the other is no public grievance of any sort, unless the public use is unreasonably abridged or inconvenienced. But if the appropriation of a part of such a stream were presumptively a public injury, the public must be deemed to have waived its right to complain, so far as the appropriation was not unreasonable, when the law permitting the organization of booming companies, and regulating their operations, was enacted. This is so because some appropriation is essential to their operations. Nothing can be a nuisance which the sovereign authority allows, especially when the allowance is on public grounds, and made to facilitate the use of that which is common to all. The question of lawfulness in the action of a booming company in enclosing part of the stream for its own purposes, whether it is done by permanent structures or otherwise, must therefore necessarily be a question depending on the particular facts; it is a question of nuisance or no nuisance; in other words, it is a question whether the general public desiring to avail themselves of the navigable rights, are or are not more inconvenienced than accommodated thereby. If they are not, the enclosure is not unlawful; if they are, it may be."

*Watts v. Tittabawassee Boom Co.*, 52 Mich. 203, 17 N. W. 809, is a case somewhat similar to this. It was there held that a boom company is liable in damages for needlessly or wilfully obstructing a navigable stream, to the hindrance and consequent injury of persons having an interest in its navigation. In the course of the opinion it was said:

"It has always been proper to stop a mass of logs in a river for the purpose of securing the rights of several owners of the same, or to prevent their loss or destruction. Of course, when this is done on the small streams, navigation is of necessity for the time being impeded. The only question which can arise in such cases is whether the stoppage of the logs was done in a reasonably prudent manner, and was continued no longer than was necessary to accomplish the object."

The Wisconsin cases are to the like effect. *Keator Lumber Co. v. St. Croix Boom Corp.*, 72 Wis. 62, 38 N. W. 529, 7 Am. St. 837; *Field v. Apple River Log Driving Co.*, 67 Wis.

569, 31 N. W. 17; *Edwards v. Wausau Boom Co.*, 67 Wis. 463, 30 N. W. 716.

Reference to some of the cases will show that they were decided upon general principles of the law, and not under the legal conditions existing in this state where the boom company is given the right to condemn and meet the consequential damages resulting to the landowner because of its operations. It would, therefore, seem that, if the occasional obstruction of a floatable logging stream is not a nuisance in and of itself, as reasoned by Judge Cooley and others who have met this question, the relator in this case cannot be heard to complain if the damages that he will suffer because of these obstructions are determined and paid him at this time, rather than put him to occasional lawsuits to recover for each particular obstruction which might be found to be unreasonably or unnecessarily prolonged.