# Richmond.

## Hot Springs Lumber and Manufacturing Company v. Revercomb.

### November 22, 1906.

#### Absent, Buchanan, J.

1. WATERS AND WATER COURSES—*Navigability—Floating Logs.*—While a stream may not be floatable in its usual and continuous condition, it is a floatable stream, and as such subject to public use, if by increased precipitation at seasons, recurring periodically with reasonably certainty, the flow of water is sufficient to be substantially useful to the public for the transportation of the products of their fields and forests.

2. WATERS AND WATER COURSES—*Floating Logs—Injury to Riparian Owners.*—The public have the right to use a floatable stream for the purpose of floating logs, and are only responsible to riparian owners for damages resulting from carelessness or negligence in the exercise of that right.

3. PLEADING—*Negligence—How Charged—General Averments—Case at Bar.*—Although a declaration alleges that a stream is not floatable, yet if the facts alleged show that the stream is, in legal contemplation, floatable, and the plaintiff is seeking to recover of the defendant damages resulting from the use of the stream for the purpose of floating logs, he must in his declaration set forth the facts that constitute the negligence on the part of the defendant for which he seeks recovery. A general averment that he carelessly and negligently permitted logs to pile up on the banks of the stream on plaintiff's land and caused the stream to overflow his land and damage it, without saying in what the carelessness and negligence consisted is not sufficient.

4. WATERS AND WATER COURSES—*Navigability—Floating Logs—Rights of Public and Riparian Owner.*—The right of passage on a navigable stream is a common and a paramount one, but must be exercised with due regard to the rights of riparian proprietors. Floating logs may cause damage to a riparian proprietor, but if done in an ordinarily careful and prudent manner, the owner of the logs floating them is not liable to the riparian proprietor. The

---

Opinion.

---

owner is not bound to build booms or other structures to protect the shores of riparian proprietors from wearing or washing away.

Error to a judgment of the Circuit Court of Bath county in an action of trespass on the case.   Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*McAllister & Nelson* and *D. Harmon,* for the plaintiff in error.

*John W. Stephenson* and *George A. Revercomb,* for the defendant in error.

Keith, P., delivered the opinion of the Court.

H. A. Revercomb brought an action of trespass on the case against the Hot Springs Lumber and Manufacturing Company and the Jackson and Cowpasture Boom Company, and in his declaration avers that he is the owner of lands to the water's edge on both sides of Jackson river, and that he also owns the bed of that stream; that the defendants went above the plaintiff's land on said river and cut and wrongfully put into the river a great many saw-logs, for the purpose of floating them down said river to the sawmill of the Hot Springs Lumber and Manufacturing Company, which is situated below the plaintiff's land.   He avers "that the said Jackson river is not a floatable stream, and was not at the time said logs were put therein, and is not a stream large enough in volume of water, in its natural condition, to float the logs of the defendants, placed therein as aforesaid, but was only capable of floating said logs when the river was swollen or made high by rains or melting snow, at irregular periods, all of which facts were well known to the de-

fendants at the time they put the said logs into said river, and at the time they purchased said logs from others, which had been put in said river for the purpose of floating the same down said stream, as aforesaid. And the plaintiff avers that when said logs were placed in said river by the defendants, wrongfully and illegally, to be washed or floated down said stream, and after they had purchased the logs from others, who had placed the same in said stream to be floated down the same, wrongfully and illegally, that the said river was on the ———— day of ——, 1904 and 1905 made deep, or raised by the rains or melting snow, and washed the said logs, placed therein by the said defendants, as aforesaid, and those purchased by them which had been placed in said river by others, as aforesaid, down the said river, and carelessly and negligently permitted said logs to pile up on the banks of said river on the lands of your complainant in great heaps and jams, which turned the water in said river from the channel where it had been accustomed to flow, and caused the water in said river to flow out, on and against the plaintiff's land, and washed away and damaged and injured the same."

Another count of the declaration avers, in addition to the cause of action just set forth, "that it was the duty of the defendants to prepare the banks of said river so as to protect the plaintiff's land from damage by said logs being piled and washed on plaintiff's land in the attempt to have the same floated or washed down said stream, as aforesaid; and plaintiff avers that it was necessary that said banks of said river should be prepared by said defendants in order to guard the plaintiff's lands against damage by floating said logs. But not regarding their duty in this particular, the said defendants failed and neglected to prepare the banks of said river so as to protect the plaintiff's land from damage from said logs; that the river being swollen by rains or melting snow, the defendants carelessly and negligently permitted the said logs to be washed or floated down said river on to the lands of the plaintiff, and

piled them upon his said land and turned the water in said stream from where it was accustomed to flow and caused it to run against the said lands of the plaintiff and wash away and destroy the natural banks of said river where it runs through his said land, and left said banks in an exposed condition, with nothing to protect them from damage by the continued wash of said river. And the plaintiff avers that the said damage is a continuing damage; that the said banks are continually being washed by the said river by reason of their having been left in the exposed condition, as aforesaid, by the said defendants, and that in order to protect his lands from being continually washed and destroyed by said river it will be necessary for him to construct expensive embankments or abutments or cribs along the banks of the said river which were left exposed, as aforesaid, the cost of which will be at least the sum of two thousand dollars."

These quotations sufficiently present the aspects of the case which we deem it necessary to consider upon the demurrer which was interposed to the declaration by the defendants and overruled by the Circuit Court.

The question presented is an interesting one, and in order to determine it we must ascertain, in the first place, what constitutes in common law a floatable stream, the subject with us not having been regulated by statute.

The contention of plaintiff in error is that for a stream to be floatable, and therefore subject to use as a highway, it is not necessary that it should possess the quality of being capable of such use during the whole year, but it is sufficient if it has water enough, as the result of natural causes, to be capable of floatage periodically during the year, so as to be susceptible of beneficial use to the public.

In *Brown* v. *Chadbourne,* 31 Me. 9, 50 Am. Dec. 641, the following instruction was refused: "To constitute Little River a navigable or floatable stream it must be shown to be capable in its ordinary and natural state of floating logs, boats and rafts;

and it is not enough to prove that logs may be carried down it at certain seasons of the year when the stream is raised by a freshet." The refusal to grant this instruction was assigned as error in the appellate court, which, in discussing the subject, says: "Those authorities upon which reliance is placed show nothing more than that small creeks or inlets, penetrating into marshes, and which can only be used at certain periods of the tide, and then only for a short time, or in which there is only a possibility of use, under some circumstances, at extraordinary high tides, are not navigable rivers. Such streams are incapable of any practical general use for the purpose of navigation, and they are dissimilar to the river under consideration. . . . A test so rigid and severe as that required by the instruction requested would annihilate the public character of all our fresh rivers, for many miles in their course, from their sources toward the ocean. The timber floated upon our waters to market is of great value, and neither the law nor public policy requires the adoption of a rule which would greatly limit their use for that purpose. The right to the use of the stream in question must prevail, whenever it may be exercised, at any state of the water."

In *Thunder Bay Booming Co.* v. *Speechley,* 31 Mich. 336, 18 Am. Rep. 184, 190, Judge Cooley, after stating that the possibility of occasional use during unusual and brief freshets could not make a stream a public highway, adds: "The doctrine, then, which we derive from the cases is that a stream may be a public highway for floatage when it is capable, in its ordinary and natural stage in the seasons of high water, of valuable public use. The inference sought to be drawn from it is that a navigable stream must, in contemplation of law, be navigable at all times, and under all circumstances; that there can be no such thing as a highway which is only open to the public use periodically, but that when once the public character of the way is established the right of the public to the easement is paramount to all private rights. . . . But no

such inference is warranted by the decisions. The highway they recognize is one *sui generis* and in which the public rights spring from peculiar facts. It is a public highway by nature, but one which is such only periodically and while the natural condition permits of a public use. During that time the public right of floatage and the private right of the riparian proprietors must each be exercised with due consideration for the other, and any injury which the latter receives in consequence of a proper use of the stream for floatage he must submit to as incident to his situation upon navigable waters."

In *Shaw* v. *Oswego Iron Co.,* 10 Or. 371, 45 Am. Rep. 146, 154, it is said: "Nor is it essential to the public easement that such capacity continue through the year; it is sufficient if its periods of high water, or navigable capacity, ordinarily continue a sufficient length of time to make it useful as a highway."

In *Gaston* v. *Mace,* 33 W. Va. 14, 10 S. E. 65, 25 Am. St. Rep. 848, 5 L. R. A. 392, it is stated: "It is contended that to show a river is public it is not enough to prove that logs may be floated down at a certain season of the year, when it is affected by a freshet, but it should have that capacity in its natural and ordinary state at all seasons of the year. None of the authorities require the stream to possess the quality of being capable of such use during the whole year. A distinguishing criterion consists in its fitness to answer the wants of those whose business requires its use. Its perfect adaptation to such use may not exist at all times, although the right to it may continue, and be exercised whenever an opportunity occurs."

In *Little Rock, &c., R. Co.* v. *Brooks,* 39 Ark. 403, 43 Am. Rep. 277, 279, it is said: "Nor is it necessary that the stream should be capable of floating boats or rafts the whole or even the greater part of the year. Upon the other hand, it is not sufficient to impress navigable character that there may be extraordinary times of transient freshets when boats might be floated out. For if this were so, almost all insignificant streams

would be navigable.   The true criterion is the dictate of sound business common sense, and depends on the usefulness of the stream to the population of its banks, as a means of carrying off the products of their fields and forests, or bringing to them articles of merchandise.   If in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then in the American sense it is navigable, although the annual time may not be very long.   Products may be ready and boats prepared, and it may thus become a great convenience and materially promote the comfort and advance the prosperity of the community.   But it is evident that sudden freshets at uncertain times cannot be made available for such purposes.   No prudent man can afford the expense of preparation for such events, or could trust to such uncertainty in getting to market."

In *Carter* v. *Thurston*, 58 N. H. 104, 42 Am. Rep. 584, it is said: "Clear stream is naturally capable of floating logs at some times every year, and to a considerable extent, and that it is reasonably and substantially useful to the public for that kind of navigation. It is, therefore, a public highway."

In Farnham on Waters and Water Rights, Vol. I, section 25, it is said: "Streams which are capable of floating to market the products of the soil along their banks are navigable within the rule subjecting navigable streams to public use.   The public have a right of way in every stream which is capable, in its natural state and its ordinary volume of water, of transporting in a condition fit for market the products of the forests or mines, or of the tillage of the soil upon its banks.   It is not essential that the property to be transported shall be carried in vessels or be guided by the hand of man, if it can be safely carried without such guidance.   Nor is it necessary that the stream shall be capable of navigation against its current, nor that it shall be navigable at all seasons of the year, it being sufficient that it becomes navigable periodically from natural

causes.  But in order to come within the rule the stream must be actually capable of some profitable use.  The capacity as shown by the use to which it is put is the true criterion by which to judge the question of navigability.  It is sufficient if it is capable of floating vessels, boats, or other craft, or rafts of logs, or logs in quantities, to make it of commercial value. The fact that the logs must be floated without being formed into rafts is not sufficient to destroy its navigable character; but the width of the stream may diminish to such an extent that only a single log at a time will float.  Such a stream would be of no commercial value, because the cost in time and labor in getting quantities of logs through it would destroy its usefulness.  Such streams are not subject to public use.  If the stream is capable of floating to a profitable extent it is navigable, and a public highway.  The stream must, however, be capable of use in its natural state, for it is not subject to public use if improvement is necessary to fit it for such use.  Most streams fluctuate in capacity, containing considerable water during the season of melting snow and the frequent fall of rains, and in periods of drouths becoming in some instances almost dry.  The fact that in the dry season the stream is not capable of use will not prevent its being used at other times when it is capable of it.  But the period of capacity must be sufficiently regular and continued to make the stream of commercial importance.  .  .  .  When the stream is in a condition to be used the riparian owner cannot do anything which will interfere with the use.  But the right of navigation does not authorize interference with the bed of the stream or with the banks, or the destruction of property on the banks.  The right to float is but a right of passage, and includes only such rights as are incident to the use of the stream for that purpose and necessary to render such use reasonably available."

The Circuit Court seems, when it came to the instructions, to have recognized the force of these authorities, for it instructed the jury as follows: "The jury are instructed that a

floatable stream is one capable of being profitably used in its natural state by the public to float logs or timber to market or mills. The stream need not be at all times in the year capable of floating logs; it is sufficient if the public may calculate with tolerable certainty as to the seasons the water will rise to and remain at such height as to enable it to make profitable use of the stream as the means of transporting logs to mills or markets by floating them in such stream."

When the authorities speak of the stream in its natural state they do not refer, we apprehend, to its volume of water, for however that may vary it is always due to natural causes; but they have reference to artificial aids or improvements. The declaration avers that the river has not sufficient water in it when in its natural or normal condition, by which we understand is meant in the more usual and continuous stages of the water, but that, in order to float the logs it is necessary for the volume of water to be increased by melted snows or rains. The condition of the stream when its volume of water is increased by such causes is as natural as when it is diminished by drought, and, as we understand the law, it is a floatable stream if by the increased precipitation at seasons, recurring periodically with reasonable certainty, the flow of water will be sufficient to be substantially useful to the public for the transportation of the products of their fields and forests.

The right of floatage is one of the innumerable limitations or qualifications by which, in a state of civilized society, we are compelled to yield something of our absolute rights with respect both to person and property, and to enjoy those rights in some degree in subordination to the rights of others. The owner of timber, for instance, upon the upper reaches of a stream, would find his property diminished in value were he not permitted to use the waterway which nature has provided. Riparian owners, therefore, upon the lower parts of the stream, must submit to this use as an incident of their ownership of lands situated upon a navigable stream.

Having come to an understanding as to what constitutes a floatable stream, we will apply it to the declaration.

The point of demurrer is that while the plaintiff denies that Jackson river is a floatable stream, his declaration sets out facts which in law make it a floatable stream; and that position is, we think, warranted by the language of the declaration, which avers that while in its "natural and normal condition"— that is to say, in its usual condition—Jackson river has not sufficient water to float logs, yet that when the volume of water is increased by melting snows and rains at irregular periods the volume of water is sufficient to float logs, which concedes to Jackson river conditions which the authorities declare to be sufficient to constitute a floatable stream. The declaration seems to have been framed upon the idea that to constitute a floatable stream it must be capable, in its ordinary and usual state, of floating logs, and that it was not enough that logs could be carried down it at certain seasons of the year when the volume of water was increased by melted snows or rains.

Having set forth, as the pleader supposes, that Jackson river is not a navigable stream, it follows, of course, that the defendants had no right in it, that they were trespassers and liable for whatever injury their trespass might have occasioned. But it was contended on the part of the defendants, in support of the demurrer, that the declaration, whatever the intent may have been, shows that Jackson river was a floatable stream, in which the defendants had a right to place their logs in order to carry them to the mill, and being in the exercise of a right they could only be responsible for carelessness or negligence in the exercise of that right; and that the declaration wholly fails to show any fact from which carelessness or negligence can be inferred.

In *Hortenstein* v. *Va.-Carolina Ry. Co.*, 102 Va. 914, 47 S. E. 996, it is said: "The object of the declaration is to apprise the adverse party of the ground of complaint, and in actions of tort the declaration must state sufficient facts to en-

able the court to say, upon demurrer, whether, if the facts stated are proved, the plaintiff is entitled to recover. A statement of a cause of action in general terms, and general averments of negligence of the defendant which fall short of this are not sufficient."

As was said by Judge Staples in *B. & O. R. R. Co.* v. *Whittington's Admr.*, 30 Gratt. 805 : "It is very true that in actions for torts it is frequently sufficient to describe the injury generally, without setting out the particulars of the defendants' misconduct. In such cases great latitude of statement is allowed. But this rule does not justify a general and indefinite mode of declaring, admitting of almost any proof."

The averment is that the defendants "carelessly and negligently permitted said logs to pile up on the banks of said river on the lands of your complainant in great heaps or jams, which turned the water in said river from the channel where it had been accustomed to flow, and caused the water in said river to flow out on and against the plaintiff's land." The declaration is wholly silent as to the act of negligence. It merely states that the logs were piled up on the banks of the stream on the plaintiff's land, which may have been the result of negligence, but is silent as to the facts which constitute the negligence. If the defendants had the right to the use of Jackson river they would not be liable for injury, although logs did pile up on plaintiff's land and injure him, provided due and ordinary care was used in floating the logs upon the stream to prevent injury to the adjacent landowners.

In *Southern Railway Co.* v. *Hansbrough's Admx.*, 105 Va. 527, 54 S. E. 17, it is held that a count in a declaration was bad which alleged "that the engine was run at a high rate of speed carelessly, negligently and unskillfully, without pointing out in what manner it was so run, and without alleging a violation of any ordinance, or averring any obstruction to the view of persons crossing, which made it necessary for the company not to run its engines at a high rate of speed, states no cause of

action, because it fails to point out in what manner the company was negligent," and for the reason that the count, having stated facts which showed that the railroad company was in the exercise of its rights, was demurrable because, while it stated in general terms that it was running its engine carelessly and negligently, it did not show with sufficient particularity of what that negligence consisted. It stated the result of the negligence, but not the acts relied upon as constituting negligence, and, therefore, did not give sufficient facts to enable the court to say whether, if they were proved as stated, the plaintiff was entitled to recover.

As was said by Judge Cooley in *Thunder Bay, &c., Co.* v. *Speechley, supra:* "When once the public character of a way is established, the right of the public to the easement is paramount to all private rights. . . . The public right of floatage and the private right of the riparian proprietor must each be exercised with due consideration for the other, and any injury which the latter receives in consequence of the proper use of the stream for floatage he must consider it as incident to his situation upon navigable waters."

And in *Carter* v. *Thurston, supra,* it is said: "If the logs were cast upon the shore, not by reason of an improper use of the stream, but by accident and without any fault of the defendants, they are not responsible at common law for the damage thus occasioned. Such streams, as well as our larger rivers, will, as experience has universally shown, from their windings and the rush of their waters, especially in times of freshets, cast floating logs upon the shores and bank."

We are further of opinion that the fourth count charges the defendants with a higher duty than is imposed upon them by law.

In *Field* v. *Apple River Log Driving Co.* (Wis.), 31 N. W. 17, the defendants, it was claimed, might have protected the land by building some structure along the shore, or by having men there to keep logs from striking it, and the court said:

"Now as we understand the law, the right of navigation is not subject to any such duty.   The right of passage on a navigable stream is a common and paramount one, but must, of course, be exercised with due regard to the rights of riparian owners. The use of the stream must be reasonable, and it must be exercised with ordinary care and skill, such as the great mass of mankind would exercise, under like circumstances, in driving logs.   If the wind-jam on the bar below the dam caused the injury complained of, it might have been the duty of the defendant to prevent such jams from forming, if it was practicable to do so by any reasonable means; but it is not its duty to build booms or other structures along the plaintiff's shore to protect it from wearing or washing away."

And in *Coyne* v. *Miss. & Run River, &c., Co.,* 71 Minn. 533, 75 N. W. 748, 71 Am. St. Rep. 508, 41 L. R. A. 498, the rule is stated thus: "The party using the highway is not an insurer, but he must not be negligent or careless.   Floating logs may cause damage to the estate of the riparian owner, but, if the party floating or driving the same uses due care and skill he is not liable for such damage.   Land on navigable streams is subject to the danger incident to the right of navigation, and where logs are driven in a stream in any ordinary, careful, prudent manner, the owner is not liable for damages which may result to the riparian owner."

We are of opinion, for the foregoing reasons, that the demurrer should have been sustained, with leave to the plaintiff to file an amended declaration.

We do not deem it proper to discuss the instructions.   What we have already said will indicate in large measure the views of the court upon the propositions of law involved, and in the present aspect of the case it would be premature for us to discuss the instructions or the evidence, as upon another trial a wholly different record may be presented.

The judgment complained of is reversed, and the cause remanded for further proceedings to be had, not inconsistent with the views herein expressed.                                    *Reversed.*