[No. 8671.  Department One.  September 20, 1910.]

THE STATE OF WASHINGTON, *on the Relation of United Tanners Timber Company, Plaintiff*, v. THE SUPERIOR COURT FOR LEWIS COUNTY *et al., Respondents.*[1]

NAVIGABLE WATERS—FLOATABLE STREAM—LOGS AND LOGGING.  A stream is navigable for the floatage of timber products, where during natural freshets occurring in the winter, spring, and fall, for varying periods of from one day to several days, it is floatable for saw logs, and is used at all times for floating shingle bolts; and the fact that use of the shores and improvements will add materially to the convenience does not affect the question of its navigability.

SAME—SHORE RIGHTS—DRIVING LOGS.  Shore rights required to facilitate the driving of logs must be acquired by private treaty or condemnation.

LOGS AND LOGGING—BOOM COMPANIES—SITES.  A boom company has a discretion as to the location of its boom site which cannot be controlled by the courts, in the absence of bad faith or legislative restriction.

SAME—NAVIGABLE WATERS—OBSTRUCTION BY BOOM.  A boom company may temporarily obstruct a river for such time as may be necessary to sort and pass the logs of the owners below.

EMINENT DOMAIN — BY BOOM COMPANY — INTERESTS OF STOCKHOLDERS.  The interest of the stockholders of a boom company in a lumber company and a connecting railway, inviting monopolistic control of the industry by them, is no objection to condemnation proceedings by the boom company; since the companies are public service corporations bound to give reasonable service and are amenable to control by the public authorities.

Certiorari to review a judgment of the superior court for Lewis county, Rice, J., entered February 23, 1910, after a hearing before the court, adjudging a public use and necessity in proceedings to condemn the use of the waters of a river for logging purposes.  Affirmed.

*Edward H. Wright*, for relator.

*Welsh & Welsh* and *George Dysart*, for respondents.

[1]Reported in 110 Pac. 1017.

13—60 WASH.

GOSE, J.—The respondent Yeomans Boom Company, hereafter called the respondent, having complied with the laws of the state relative to boom and driving companies, filed its petition in the superior court of Lewis county for the purpose of condemning the right, as against the relator, to impound and release the waters of the Chehalis river above the relator's land, for the purpose of driving logs and timber products through the land of the relator to the respondent's boom below, together with the right to use the banks of the stream through its land to the extent of ten feet upon both sides thereof. The court adjudged the use to be a public one; that the public interest requires the prosecution of the enterprise, and that the respondent is entitled to condemn, and directed that a jury be impaneled to ascertain the relator's damages. The relator has obtained a writ of certiorari to review the judgment.

Its principal contention is that the Chehalis river is not a navigable or floatable stream in its natural state. Upon that question the court found:

"That said Chehalis river within the limits of petitioner's said plat of location, and in fact, at all places, is during the freshet season of each year, in its natural condition without the aid of artificial freshets navigable for the floatage of sawlogs and other timber products. That said Chehalis river is capable in its natural condition at ordinary recurring freshets, of being successfully and profitably used for the floatage of sawlogs and other timber products. That said Chehalis river at all places within petitioner's said plat of location and at all places in said river, is subject to periodical fluctuations in the volume and heights of its waters, attributable to natural causes and recurring as regularly as the seasons of the year, and during all of these times, is capable of floating logs and other timber products to and toward market, and these periods continue for a sufficient length of time to make it useful as a public highway for the floatage of logs and other timber products. That said Chehalis river in its natural condition, is navigable and floatable during the freshets, which occur with periodic regularity in the

winter, spring and autumn of each year, for the floatage of
logs and other timber products to mill and to market, but
that at other seasons of the year said river is not navigable
for the floatage of logs, but is for shinglebolts and that it is
necessary in order to make said Chehalis river commercially
more valuable for the floatage of logs and other timber pro-
ducts, to maintain and operate dams in said river within
the limits of petitioner's said plat of location and by use of
said dams to create, artificial freshets with which to float or
drive logs and other timber products down said river."

We think the finding is supported by the evidence. With-
out reviewing the record in detail, it suffices to say that it is
shown that, during the recurring freshets which occur three
or four times each year, the river is floatable for sawlogs for
varying periods of from one day to several days each, and
that it has been used by settlers upon the river above and
below the lands of the relator for the purpose of floating
shinglebolts. It is said that the river is not floatable within
the meaning of the law, because the times when it can be so
used are not of sufficient duration, and because the times
when the freshets will recur cannot be accurately fore-
casted. It is, however, shown that they recur during the
fall, winter, and spring seasons. Wherever the navigable
capacity of a stream is not continuous, but is dependent upon
the falling of the rain or the melting of the snow, the pre-
cise date at which it will occur will necessarily vary with the
seasons and be somewhat conjectural. The objection that
the freshets which cause the river to be floatable are not of
sufficient duration goes more to the question of the value and
utility of the stream as a public highway than to the legal
aspect of the question.

It is shown, and the court found, that about a billion feet
of merchantable timber is tributary to the river and within
the respondent's plat, which at present has no outlet to
market other than the river. The record shows that this
timber is owned by about fifty persons. A stream which dur-
ing naturally recurring freshets is navigable for floating logs.

or timber is a public highway for that purpose. *Watkins v. Dorris*, 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Kalama Elec. L. & P. Co. v. Kalama Driving Co.*, 48 Wash. 612, 49 Pac. 469; *State ex rel. Wilson v. Superior Court*, 47 Wash. 397, 92 Pac. 269. The same principle applies to a stream which contains sufficient volume of water to float shinglebolts in its natural state during annually recurring periods. *Monroe Mill Co. v. Menzel*, 35 Wash. 487, 77 Pac. 813, 102 Am. St. 905, 70 L. R. A. 272. The rule is that, if the stream

"is ordinarily subject to periodical fluctuations in the volume and height of its water, attributable to natural causes, and recurring as regularly as the seasons, and if its periods of high water or navigable capacity ordinarily continue to a sufficient length of time to make it useful as a highway, it is subject to the public easement." *Morgan v. King*, 35 N. Y. 454.

"Its perfect adaptation to such use may not exist at all times, although the right to it may continue, and be exercised whenever an opportunity occurs." *Gaston v. Mace*, 33 W. Va. 14, 10 S. E. 60, 25 Am. St. 848, 5 L. R. A. 392.

"If in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose [floating timber] at some seasons of the year, recurring with tolerable regularity, then in the American sense it is navigable, although the annual time may not be very long." *Hot Springs Lumber & Mfg. Co. v. Revercomb*, 106 Va. 176, 55 S. E. 580, 9 L. R. A. (N. S.) 894.

The condition of a stream, when its volume of water is increased by the falling of the rain or the melting of the snow, is as natural as when it is diminished by the drought; and it is a floatable stream if, from natural causes recurring periodically with reasonable certainty, the flow of the water will be sufficient to be substantially useful to the public for the transportation of the products of the fields and forests. The fact that the use of the shores will materially add to the convenience of driving the timber does not affect the question of the natural navigable capacity of the river. It is probably true that, in all such streams, the timber will congest or

jam, and that the jams are more easily broken from the shore than from the body of the stream.   As was said by Chief Justice Ryan, in *Olson v. Merrill*, 42 Wis. 203:

"A stream is none the less navigable because persons using it are induced by convenience to prefer unlawful to lawful means in aid of the use."

Where the use of shore rights is required to facilitate the driving of logs, they must be acquired by private treaty or by condemnation.   *Watkins v. Dorris, Monroe Mill Co. v. Menzel*, and *Kalama Elec. L. & P. Co. v. Kalama Driving Co., supra*.

It is next contended that the receiving boom should have been constructed about three miles below its present location; that the record shows that there is a feasible boom site at such point, and within a half mile from the line of the Northern Pacific railroad, and that the present site was selected with a view of giving the Pe Ell & Columbia River railroad a monopoly of the business.   Several answers may be made to this contention: (1) The record does not show that the lower site is practicable; (2) the respondent has a discretion as to the place where it will locate its boom, which cannot, in the absence of bad faith, or except as restricted by the legislature, be controlled by the courts.   2 Lewis, Eminent Domain (3d ed.), § 604; 10 Am. & Eng. Ency. Law (2d ed.), p. 1057; *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670; *State ex rel. Murhard Estate Co. v. Superior Court*, 49 Wash. 392, 95 Pac. 488; *State ex rel. Milwaukee Term. R. Co. v. Superior Court*, 54 Wash. 365, 103 Pac. 469, 104 Pac. 175; and (3) the record shows that the line of road of the Pe Ell & Columbia River Railway Company extends from the town of Pe Ell to the boom site, a distance of four miles, and that the line of the Northern Pacific Railway Company extends through Pe Ell.

It is next contended that the respondent's boom completely obstructs the river.   This contention is not supported by the record.   The evidence is that the dam is so constructed that it

can be readily opened so as to permit logs consigned to other points to pass down the stream. In *State ex rel. Pealer v. Superior Court*, 58 Wash. 565, 109 Pac. 340, we said:

"It is apparent that they [the boom company] must obstruct the river above the dam at times, or cease to do business. The legislature, in granting the right to construct a boom and splash dams and drive logs and timber by artificial freshets, by necessary implication gave the right to obstruct navigation at times. It is, as the court found, unavoidable in accomplishing the purpose for which the respondents were created. . . . The use of a stream such as the Humptulips river, a stream two to three hundred feet in width, for the purpose of floating and holding logs, is necessarily at times an exclusive use, and either such right must be conceded or the business of floating logs in such streams must cease. The legislature, we think, contemplated the precise contingency."

See, also, *Lindsay and Phelps Co. v. Mullen*, 176 U. S. 126.

The temporary detention of logs for such reasonable time as it takes to sort them and to pass the logs of the various owners to the boom below, to which they may be consigned, is not within the prohibition of the law. *West Branch Boom Co. v. Pennsylvania Joint Lumber & Land Co.*, 121 Pa. St. 143, 15 Atl. 509; *Edwards v. Wausau Boom Co.*, 67 Wis. 463, 30 N. W. 716.

The facts, that stockholders of the respondent are heavily interested in the Pe Ell & Columbia River Railway Company, and that such road does not connect with the Northern Pacific Railway Company's line of road at Pe Ell, and that the stockholders of the respondent own the industry known as the Yeomans Lumber Company, require no extended consideration. Both the respondent and the Pe Ell Railway Company are organized as public service corporations, and if they fail to discharge their respective public duties, or exact unreasonable charges for their services, they are amenable to public regulation, and any gross abuse will not long remain uncorrected. Moreover, it appears that the Pe Ell Railway Company has practically completed arrangements with the North-

ern Pacific railroad for track connections at Pe Ell, and for handling the latter's cars over its road.

The objection that the Pe Ell railroad does not connect with the public highway at the boom site requires only a passing notice. As a public service corporation, it has the right to condemn whatever land may be necessary for the discharge of its duties as a common carrier, and the presumption is that it will put itself in a position to receive whatever freight is offered at that point, without unnecessary delay. It is not important that, up to the time of the trial, it had carried no freight for parties other than the respondent. Being a public service corporation, as we have said, its duty is to receive all freight offered without discrimination, and there is no evidence that it has failed to discharge its duty in this respect. *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198; *State ex rel. Hulme v. Grays Harbor & P. S. R. Co.*, 54 Wash. 530, 103 Pac. 809; *State ex rel. McIntosh v. Superior Court*, 56 Wash. 214, 105 Pac. 637.

The judgment is affirmed.

Rudkin, C. J., Morris, Fullerton, and Parker, JJ., concur.