[No. 12366.   Department One.   January 8, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Clear Lake Logging Railroad Company, Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—LOGGING RAILROAD.  A logging railroad is entitled to exercise the right of eminent domain to condemn lands for right of way on a showing of a large supply of timber tributary to the road, since the bringing of this timber to mill or market would constitute a public use regardless of the extent of the use.

SAME—PRIVATE INTEREST OF LUMBER COMPANY—EFFECT.  The interest of the stockholders of a lumber company in a logging railroad is no objection to condemnation proceedings by the railroad company, since the latter is a public service corporation bound to give reasonable service to the public and is amenable to control by the public authorities.

SAME—SELECTION OF ROUTE—NECESSITY OF TAKING—REVIEW.  The choice by a logging railroad of a route across respondent's lands as the most feasible and practicable will not be controlled by the

[1]Reported in 145 Pac. 421.

courts because it may interfere with respondent's contemplated use of a portion of the land for a mill site, when there is no sufficient showing that the land sought is not reasonably necessary, and it was not convincingly shown that a slight change of location would meet the necessity of the taker and cause less damage to the owner; the availability for the owner's special purpose being an element to be considered in estimating damages, and not as defeating the right of condemnation.

EMINENT DOMAIN—COMPENSATION—PREPAYMENT — DAMAGES—APPEAL—COSTS.    Under Const., art. 1, § 16, prohibiting the taking of private property without just compensation being first made or paid into court, the costs of an appeal, successfully prosecuted by the petitioner from an order denying a public use, which was reversed, cannot be taxed against the landowner; since the proceedings to review the order was a necessary part of the petitioner's proceedings to take the land, which the petitioner is required to pay before the taking.

Certiorari to review an order of the superior court for Thurston county, Claypool, J., entered August 26, 1914, denying the right to condemn property for a right of way for a toll logging road, tried to the court. Reversed.

*Dysart & Ellsbury* and *F. D. Oakley*, for relator.

*T. F. Mentzer* and *Troy & Sturdevant*, for respondents.

MORRIS, J.—This writ was sued out to review an order of the court below denying relator an order of public use and necessity. Relator, as indicated by its name, was organized as a toll logging road, and is seeking to condemn a thirty-foot right of way to extend its road a distance of about 3,500 feet across lands of the respondent Mentzer Brothers Lumber Company. The chief objections urged to the entry of the order of public use are, (1) no showing of any public use; (2) the contemplated use is the private use of the A. P. Perry Lumber Company; (3) other and more feasible locations not interfering with the respondent's contemplated use of its property. Relator offered evidence to the effect that there was from 150,000,000 to 250,000,000 feet of timber tributary to the first four miles of the proposed route, and

beyond that the supply was unlimited. Respondent's estimate of the amount of timber accessible was much less. It is evident, however, that there is a large supply of timber tributary to the proposed road. Bringing this timber to mill or market is certainly a public use. It is also shown that, since the relator began operating the road as at present constructed, it has been used to some extent for the shipment of timber products. The amount of service that has been rendered other parties is not so material in determining the question of the public use so long as the relator receives without discrimination all that is offered and has in no respect failed to discharge its duty in this regard. It is the nature and not the extent of the use that determines its public character. *State ex rel. United Tanners' Timber Co. v. Superior Court*, 60 Wash. 193, 110 Pac. 1017.

The second objection is based upon respondent's contention that relator is but another name for the A. P. Perry Lumber Company, and that its purpose is to serve the logging plant of the lumber company. The fact that a large part of relator's business would be the transportation of timber for the Perry Lumber Company, and that the timber company would exercise a controlling interest in the logging railroad, does not destroy the character of the relator as a public service corporation, nor change its contemplated use from a public to a private use. A like contention was urged against the right of condemnation in the *United Tanners' Timber Co.* case *supra*. It was there met by saying that public service corporations are amenable to public regulation and can be made to discharge their public duties in a satisfactory manner. Overruling a similar contention in *State ex rel. McIntosh v. Superior Court*, 56 Wash. 214, 105 Pac. 637, we said:

"The fact that private individuals or private corporations having a special interest in the construction of a railroad subscribe to its capital stock does not deprive the road of its public character. The road when constructed will be a pub-

lic service corporation and must serve the public, regardless of the individuality of its stockholders or the business in which they may be engaged."

In support of the third contention, respondent sought to show that the route selected by relator was not the most feasible or practicable route across the lands in question, that other available routes existed that could be made use of without serious damage to respondent, and that more especially the route selected would destroy a contemplated mill site. It may be said generally that in determining questions of this character it is not a question whether or not there is other land to be had that is equally available for the intended use, but the real question is whether the land sought to be taken is required for a public use; (*Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670), and whether upon all of the facts shown in the record the route adopted by the relator is the most feasible, and a reasonable necessity exists for its appropriation. *State ex rel. Milwaukee Terminal R. Co. v. Superior Court*, 54 Wash. 365, 103 Pac. 469, 104 Pac. 175. Except as specially restricted by statute, public service corporations invested with the power of eminent domain for a public use can make their own location according to their own views of what is best or expedient, and this discretion will not be controlled by the courts (*State ex rel. Clark v. Superior Court*, 62 Wash. 612, 114 Pac. 444; 2 Lewis, Eminent Domain, § 604), until it is convincingly shown that the land sought is not reasonably necessary, and that a slight change of location will equally meet the necessity of the taker and be of much less damage to the owner. *State ex rel. Postal Telegraph-Cable Co. v. Superior Court*, 64 Wash. 189, 116 Pac. 855. The showing here made is not sufficient to invoke this last rule. Reviewing it as a question of fact, there is no question in our mind but that the route selected is both the most feasible and practicable.

Nor can relator's right to this route be denied because it will cross a portion of respondent's land that respondent says is available for a mill site upon which, at some future time when conditions warrant, it intends to construct a mill. The availability for any special purpose of property taken or damaged in eminent domain proceedings is only one of the questions to be considered in estimating the damages to be paid. The courts cannot say to corporations exercising this right, you should select another route because it is cheaper or because you will destroy a valuable building site. The only thing we have to determine is the right to take the property, which, when it exists, applies equally to all property irrespective of its value or contemplated use.

The order under review is reversed, and the cause remanded with instructions to enter an order of public use and proceed with the condemnation proceedings.

Crow, C. J., Gose, and Parker, JJ., concur.

## On Motion to Retax Costs.

[Decided April 29, 1915.]

Mount, J.—The relator filed a cost bill amounting to $152.10, which the clerk of this court refused to tax against the respondents. The relator has filed a motion to require the clerk to tax these costs against the respondents.

In the case of *Kitsap County v. Melker,* 52 Wash. 49, 100 Pac. 150, we held that article 1, § 16, of the constitution, providing that private property shall not be taken or damaged without just compensation having been first made or paid into court, prevents the taxation of costs in condemnation proceedings against the landowner in the lower court, but does not exempt him from the costs of his appeal to the supreme court. In that case, after reviewing several authorities, we said:

"It is manifest, from this long line of cases, that any form of procedure which taxes the costs of condemnation proceed-

15—83 wash.

ings in the superior courts to the landowner is in violation of the section of the constitution above quoted."

In *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, at page 93, 102 Pac. 1041, 104 Pac. 267, where the Grays Harbor Boom Company appealed from an award of damages in a condemnation proceeding, we reversed the judgment and awarded a new trial. The boom company filed a cost bill in this court which the clerk taxed against the petitioner, the respondent in the original case. We sustained a motion to strike the cost bill, for the reason that, under the constitution, no private property shall be taken or damaged for public use without just compensation having been first made or paid into court for the owner, together with costs of the proceedings to ascertain the damages. In that case we quoted from *Matter of New York etc. R. Co.*, 94 N. Y. 287, as follows:

"But the appeal was taken by the company because it was dissatisfied with the amount awarded, and was a continuation of the proceeding instituted by it to ascertain the compensation payable to the landowners, to acquire their land against their will. In such a case to compel the landowners to pay any part of the expense incurred by the company for the purpose of ascertaining the compensation, which proceedings were an indispensable condition of its right to take the land, would conflict with the constitutional right of the landowners to just compensation."

That rule must be followed in this case. It was incumbent upon the relator to prove that the use which it sought to make of the land was a public use. It was unsuccessful in the lower court. This necessitated a review of the order of that court. The proceeding leading up to the final adjudication of this court was a part of the proceeding necessary before the land could be condemned. The landowner had a right to stand by, or to resist the application, knowing that, before its land could be taken, the use for which it could be taken must be adjudged a public use, and the value thereof, with the costs of the proceeding, must be paid into court for its use and benefit. If the court had rendered a judgment

holding that the contemplated use was a public use, and the landowner had sought to review that order, a different question would be presented. But in this case, the landowner did not seek the review. It was sought by the relator as a necessary part of the proceedings to take the land; and the petitioner was, therefore, required to pay the costs in this court, as well as the costs in the lower court, before the land could be taken. We are satisfied that the clerk properly refused to tax the costs against the landowner. The motion is therefore denied.

MORRIS, C. J., HOLCOMB, PARKER, and CHADWICK, JJ., concur.